*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0402p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: SOUTHEAST WAFFLES, LLC,

                             *Debtor.*

_____

SOUTHEAST WAFFLES, LLC,

                     *Plaintiff-Appellant*,

      *v.*

UNITED STATES DEPARTMENT OF
TREASURY/INTERNAL REVENUE SERVICE,

                     *Defendant-Appellee*.

No. 11-6522

Appeal from the United States Bankruptcy Appellate Panel.
No. 3:08-BK-07552—Keith M. Lundin, U.S. Bankruptcy Judge.

Argued: October 9, 2012

Decided and Filed: December 6, 2012

Before: BOGGS and CLAY, Circuit Judges; and STAFFORD, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Glenn B. Rose, HARWELL HOWARD HYNE GABBERT & MANNER, P.C., Nashville, Tennessee, for Appellant. Rachel I. Wollitzer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Glenn B. Rose, Barbara D. Holmes, HARWELL HOWARD HYNE GABBERT & MANNER, P.C., Nashville, Tennessee, for Appellant. Rachel I. Wollitzer, Tamara W. Ashford, Jonathan S. Cohen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

1

———————————

**OPINION**

———————————

STAFFORD, District Judge.   The appellant-debtor, Southeast Waffles, LLC ("SEW"), appeals the Bankruptcy Appellate Panel's affirmance of the bankruptcy court's order dismissing SEW's adversary proceeding for failure to state a claim.  SEW filed its adversary proceeding against the United States in SEW's Chapter 11 bankruptcy case, seeking avoidance of prepetition payments of tax penalties as fraudulent transfers under the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(B), and the Tennessee Uniform Fraudulent Transfer Act ("TUFTA"), Tenn. Code Ann. § 66-3-301 *et seq.*  We **AFFIRM**.

I.

A.

As alleged in SEW's adversary complaint, the facts are as follows:

SEW, a limited liability corporation, was formed in 1999 for the purpose of purchasing, and operating as a franchisee, Waffle House restaurants.  When SEW filed its Chapter 11 petition on August 25, 2008 (the "Petition Date"), SEW operated approximately 113 Waffle House restaurants located in Tennessee, Alabama, Mississippi, and Kentucky.

Throughout the period from January 1, 2005, to the Petition Date, SEW failed to pay all of the federal income tax withholding, social security (FICA), and unemployment (FUTA) taxes that were due to the Internal Revenue Service ("IRS").  SEW also failed to timely file all returns relating to these taxes.  Because SEW employed many hundreds of individuals in the restaurants it operated, the payments due to the IRS for federal income tax withholding, FICA, and FUTA taxes were sizable.

During the four years prior to the Petition Date, the IRS assessed penalties well in excess of $1,500,000 for SEW's failure to timely file its tax returns and to fully and

timely pay the taxes due.  Throughout this time period, SEW was insolvent and owed unsecured debts to one or more creditors.

After the penalties were assessed, SEW made payments that were applied to its tax obligations and also made several undesignated prepetition payments to the IRS that were applied in partial satisfaction of the assessed penalties.  SEW's complaint does not make clear how the IRS divided SEW's payments among penalties, taxes, and interest.

B.

After filing its voluntary Chapter 11 petition in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court"), SEW operated its business and managed its properties as debtor-in-possession until SEW sold substantially all of its assets effective October 1, 2009.  No trustee was appointed in SEW's bankruptcy case.  A liquidation agent, Gary M. Murphey, was appointed to administer SEW's residual assets.  Murphey continues to serve in that role.

Pursuant to its confirmed Chapter 11 Plan, SEW retained "Recovery Causes of Action," including all avoidance actions, belonging to it or to the bankruptcy estate. SEW filed this avoidance action on August 24, 2010, seeking recovery from the IRS of prepetition tax penalty payments in the amount of $637,652.07 or, in the alternative, an offset in the amount of the penalty payments against the tax amounts still owed to the IRS.  In its complaint, SEW alleged that (1) "the imposition and payment of these penalties provided no value to [SEW]" because "these penalties did not decrease in any way the amount actually due from [SEW] for federal income tax withholding, social security and FUTA taxes"; (2) SEW "did not receive reasonably equivalent value in exchange for the Penalty Payments"; (3) "[a]t the time that [SEW] made most of the Penalty Payments, [SEW] was insolvent"; and (4) "[e]ach Penalty Payment that SEW made while insolvent . . . is avoidable by [SEW] pursuant to 11 U.S.C. 548 and 544, as well as Tenn. Code Ann. § 66-3-301 *et seq.*"  SEW did not allege that the penalty *obligations*—those already paid as well as those then unpaid—were themselves avoidable under the fraudulent-transfer statutes.

The United States filed a motion to dismiss SEW's complaint for failure to state a claim, arguing that SEW's prepetition tax-penalty payments did not and could not constitute fraudulent transfers because, as a matter of law, the dollar-for-dollar reduction in SEW's antecedent tax-penalty liabilities constituted reasonably equivalent value for the penalty payments. SEW having failed to allege that the penalty *obligations* were themselves avoidable, the United States understandably focused its motion to dismiss exclusively on SEW's claims that the penalty *payments* were avoidable.

In response to the government's motion, SEW continued to assert that each of the penalty *payments* was a fraudulent transfer. In SEW's words:

> A payment of penalties assessed by the IRS does not reduce [SEW's] liability for unpaid taxes or stop the accrual of interest on unpaid taxes. Indeed, when as in this case the IRS applies payments to penalties because [SEW] failed to designate that the payments be applied to its actual existing tax liability, satisfaction of the penalty affirmatively harmed [SEW] because it precluded a reduction in its actual tax liability, which would have also reduced its on-going interest liability. Given these circumstances, a finding that [SEW] received disproportionately small value in exchange for the satisfaction of these penalties is warranted.

While still maintaining that each penalty *payment* was a fraudulent transfer, SEW added that, by failing to give anything of value to SEW when the penalties were first assessed, the IRS received a fraudulent conveyance when the debt or obligation arose.

At a hearing on the government's motion to dismiss, SEW reiterated its arguments regarding reasonably equivalent value, again suggesting that it did not receive reasonably equivalent value either at the time the penalties were paid or at the time the penalty obligations were imposed. Although the Bankruptcy Court's reasoning is not entirely clear, it appears that the judge found that the *imposition* of penalties—i.e., the incurrence of the *obligation*—was not itself a fraudulent conveyance subject to avoidance. Among other things, the judge stated:

> This is not a case where the debtor is claiming on summary judgment or . . . in any manner that . . . these penalties were fraudulent

in the sense of—if you can imagine how a taxing authority might act fraudulently; I'm not sure what that would look like.

. . . .

[I]t is not disputed that the debt was legitimately due for the penalties from this debtor, and that there's no evidence of fraud or other misconduct or anything else that would throw into question whether the Government accurately and correctly, according to its regulations and its statutes, credited the debtor, dollar for dollar, for the penalty debt when it took the debtor's money and applied it to the penalties.

Consistent with his conclusion that no fraud was involved, the bankruptcy judge said: "So let's put aside debts fraudulently incurred, because that—that's a whole other class."

The Bankruptcy Court acknowledged that, in *In re Standard Johnson Co., Inc.*, 90 B.R. 41 (Bankr. E.D.N.Y. 1988) (holding that penalties assessed on prepetition taxes were not entitled to priority), the court suggested, in dicta, that a tax penalty "might be avoidable under § 548(a)(2) or other applicable state law" to the extent that "the debtor did not receive reasonably equivalent value in exchange for that portion of the obligation representing penalties wholly unrelated to any actual pecuniary loss suffered by the government." *Id.* at 44 (footnote omitted). The Bankruptcy Court here dismissed the *Standard Johnson* court's "musing" as having no precedential value at all, adding: "In the 22 years since [*Standard Johnson*], no court—state or federal, trial or appellate—[has held] that a non-collusive, legit[imate] tax penalty payment during the insolvency of a bankruptcy debtor . . . is recoverable as a fraudulent conveyance." Acknowledging that the fraudulent-transfer statutes do not expressly insulate prepetition noncompensatory penalties—or payments in satisfaction thereof—from recovery, the Bankruptcy Court nonetheless concluded that Congress never intended that such penalties be avoidable as fraudulent transfers.

The Bankruptcy Court summed up its decision as follows:

I hold, as a matter of law, [that SEW] received reasonably equivalent value when its penalty debt to the Government was reduced on a dollar-for-dollar basis on the payment of those . . . penalties.

Implicit in this is that I believe if the debt was legitimate, as I have found, that the payment of the penalty is an incontestably reasonably equivalent value to the debtor.

The Bankruptcy Appellate Panel ("BAP") affirmed the Bankruptcy Court's dismissal of SEW's adversary action. The BAP defined the issue before it as follows:

The issue squarely before this Panel is whether [SEW] received less than reasonably equivalent value when the IRS applied prepetition payments made by [SEW] to the penalty portion of the tax liability. SEW argues that it received "zero" value for the payment when the IRS applied [SEW's] payments to the penalty portion of the liability rather than applying the payment to the tax or interest portion of the liability. [SEW] then argues that because it received "zero" value for the payment, the transfer (payment) must be avoided as a fraudulent transfer.

*Southeast Waffles, LLC v. U.S. Dep't of Treasury* (*In re Southeast Waffles, LLC*), 460 B.R. 132, 139 (B.A.P. 6th Cir. 2011).

Citing § 6671(a) of the Internal Revenue Code, the BAP explained that the penalty portion of a taxpayer's liability to the IRS is an integral part of the taxpayer's total tax debt.[2] *Id. A fortiori*, whenever a payment of the penalty portion is made, the taxpayer's total tax debt is reduced dollar for dollar. Finding considerable case law holding that a dollar-for-dollar reduction in debt is sufficient to establish equivalent value for purposes of the fraudulent-transfer statutes, the BAP concluded that SEW's payment of penalties did not constitute a fraudulent transfer because those payments reduced SEW's total tax debt dollar for dollar, thereby providing SEW with reasonably equivalent value for its payments. *Id.* at 140.

The BAP shared the Bankruptcy Court's concern about the implications of a decision that would—if SEW prevailed—put into question "every noncompensatory fine or penalty of any sort that had ever been paid during a fraudulent conveyance period."

---

[2]26 U.S.C. § 6671(a) provides as follows:

(a) **Penalty assessed as tax**.--The penalties and liabilities provided by this subchapter . . . shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.

*Id.* at 144. Like the Bankruptcy Court, the BAP found no case law to support SEW's argument that a prepetition payment of a legitimate, non-collusive, noncompensatory tax penalty may be avoided as a fraudulent transfer. *Id.* at 142. Declining to find that SEW stated a claim for avoidance under the fraudulent conveyance statutes, the BAP affirmed the Bankruptcy Court's dismissal of the case.

SEW appealed to this court, challenging the Bankruptcy Court's dismissal of its complaint for failure to state a claim. Without acknowledging that its allegations and arguments below were focused largely on the avoidability, if any, of the prepetition *payments* it made to the IRS, SEW now contends that "[t]he lower courts committed reversible error because they failed to consider SEW's argument that the penalties imposed by the IRS were fraudulent *obligations* subject to avoidance." According to SEW, the Bankruptcy Court and the BAP had the timing wrong—i.e., they should have determined whether or not SEW received reasonably equivalent value as of the time the penalty obligations were incurred and not when the payments were made.

## II.

### A.

In appeals from the BAP, we review the bankruptcy court's decision directly. *Dickson v. Countrywide Home Loans* (*In re Dickson*), 655 F.3d 585, 590 (6th Cir. 2011). Whether the bankruptcy court correctly dismissed an action for failure to state a claim is a question of law that we review *de novo*. *Hobbs v. Hobbs* (*In re Hobbs*), 229 F.3d 1152, at *1 (6th Cir. 2000) (unpublished table decision). When reviewing a motion to dismiss, we must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

SEW asserts claims under the fraudulent-transfer sections of both the Bankruptcy Code and TUFTA. Under both statutes, a transfer is fraudulent—and therefore avoidable—if it involved either actual or constructive fraud. At issue in this case are the

constructive fraud provisions of the two laws.  SEW has not asserted a claim for actual fraud.

> The Bankruptcy Code's constructive-fraud provision states:
> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>  . . . .
>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(1)(B).[3]

> TUFTA contains a similar provision, which states:
>
> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> . . . .
>>
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

---

[3]While § 548 permits only *trustees* to avoid fraudulent transfers, § 1107 provides Chapter 11 debtors-in-possession with the avoidance powers of a trustee.

Tenn. Code Ann. § 66-3-305(a)(2).  In an action for relief under TUFTA, "a *creditor* . . . may obtain . . . [a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."  *Id.* § 66-3-308(a)(1) (emphasis added).[4]  The reach-back period under TUFTA is four years.  *Id.* § 66-3-310.

"Reasonably equivalent value" is not defined in either the Bankruptcy Code or in TUFTA.  The Bankruptcy Code's fraudulent-transfer provision defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A).  TUFTA provides that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied."  Tenn. Code Ann. § 66–3–304(a).  Typically, a dollar-for-dollar reduction in debt constitutes—as a matter of law—reasonably equivalent value for purposes of the fraudulent-transfer statutes.  *See, e.g.*, *Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 F. App'x 337, 343 (6th Cir. 2006) (finding reasonably equivalent value where debtor received a $1 million debt reduction in exchange for his $1 million payment); *Official Comm. of Unsecured Creditors v. BNP Paribas* (*In re Propex Inc.*), 415 B.R. 321, 332-33 (Bankr. E.D. Tenn. 2009) (finding reasonably equivalent value as a matter of law—under both the Bankruptcy Code and TUFTA—where debtor received a dollar-for-dollar reduction in debt in exchange for its $20 million payment).

## B.

Faulting the Bankruptcy Court for having the timing wrong in this adversary action, SEW argues that the Bankruptcy Court should have focused on the IRS's *assessment* of the penalties—rather than SEW's *payment* of the penalties—because "payments made on an obligation do not qualify as reasonably equivalent value if the obligation to which those payments are applied is avoidable."  SEW, however, did not allege in its complaint that the penalty *obligations* were avoidable, making the payments recoverable; nor did SEW ask the court to avoid the penalty obligations allegedly

---

[4]The parties have not addressed the issue of whether SEW, as a debtor-in-possession rather than a creditor, may seek relief under section 66-3-308(a)(1).

totaling "well in excess of $1,500,000." Instead, SEW alleged that its prepetition penalty *payments* of $637,652.07 were constructively fraudulent and, therefore, avoidable. To the extent that the Bankruptcy Court's dismissal of SEW's complaint was premised on the avoidability of the penalty *payments*, its decision was not in error. SEW cannot state a claim for avoidance of payments that necessarily resulted in a dollar-for-dollar reduction in the penalties due.[5] *In re Propex*, 415 B.R. at 324.

## C.

After its complaint was filed, and without ever seeking to amend its complaint, SEW began shifting its focus from the payments to the obligations. Indeed, in its response to the IRS's motion to dismiss, SEW explicitly argued—both in writing and at a hearing before the Bankruptcy Court—that the obligations were themselves avoidable as fraudulent conveyances. The Bankruptcy Court entertained, but rejected, SEW's argument, finding that the debt itself was "legitimate" and not avoidable. We agree with that decision.

When interpreting a statute, we begin with the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Both the Bankruptcy Code and the Tennessee fraudulent-transfer statute provide, in relevant part, that an "obligation incurred" may be avoided if the debtor received less than "a reasonably equivalent value" in "exchange" for the obligation. 11 U.S.C. § 548(a); Tenn. Code Ann. § 66-3-305(a).

The Bankruptcy Court assumed that a debtor's prepetition noncompensatory tax penalty is, for purposes of the fraudulent-transfer statutes, an "obligation incurred" for less than "reasonably equivalent value." The Bankruptcy Court nonetheless rejected the notion that a noncompensatory tax penalty that is statutorily required and properly imposed can be avoided as a fraudulent obligation if assessed against an insolvent debtor within the relevant reach-back period. Like the BAP, the Bankruptcy Court concluded

---

[5]It is clear from SEW's complaint, and the parties have so stipulated, that SEW's penalty payments resulted in a dollar-for-dollar reduction in the penalties due.

that neither Congress nor the Tennessee Legislature intended such assessments to be included within the ambit of the "exchanges" targeted in the fraudulent-transfer laws.

SEW has cited no case, and this panel has found no case, in which prepetition tax penalties—or prepetition payments in satisfaction thereof—have ever been avoided under the fraudulent-transfer statutes. On the other hand, there is one case—a case decided under the fraudulent-transfer section of the Bankruptcy Act of 1898, as amended (the "1898 Act")[6]—wherein the court rejected the trustee's attempt to recover the debtor's prepetition payments of tax penalties. *Lynn v. Comm'r* (*In re Randazzo, Inc.*), 34 B.R. 76 (Bankr. N.D. Tex. 1983). In *Randazzo*, the trustee argued that the debtor's prepetition penalty payments were constructively fraudulent, and therefore avoidable, because the debtor did not receive "fair consideration" in exchange for the payments. The trustee based his lack-of-fair-consideration argument on section 57j of the 1898 Act, which provided that "[d]ebts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose." 11 U.S.C. § 93(j) (1976). According to the trustee, the debtor did not receive fair consideration for his penalty payments because the IRS's claim for tax penalties would have been disallowed altogether if such claim had remained unpaid when the debtor filed its petition. The *Randazzo* court rejected the trustee's argument, explaining that, while section 57j did not allow funds included within the bankruptcy estate to be used for the payment of noncompensatory penalties, penalty payments made from prepetition funds were not similarly disallowed. Because the debtor's prepetition penalty payments resulted in a dollar-for-dollar reduction in a legitimate tax liability, the *Randazzo* court ruled that the payments could not be avoided or recovered as fraudulent transfers. *Id.* at 78.

---

[6]The 1898 Act provided, in pertinent part, that "[e]very transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent." 11 U.S.C. § 107(d)(2) (1976).

In 1978, after almost ten years of careful study and investigation, Congress enacted a comprehensive revision of the 1898 Act. In the Bankruptcy Act of 1978, Congress did not include a provision similar to former section 57j, which—in broad language—had made noncompensatory penalties nonallowable in bankruptcy. Instead, Congress specifically addressed the matter of noncompensatory penalties throughout the Bankruptcy Code, carefully differentiating the treatment of such penalties in different contexts. Despite the specificity included elsewhere in the current Code, Congress included not one word about noncompensatory penalties in the Code's fraudulent-transfer provision. Such silence is telling in a Code that is otherwise specific about the treatment of noncompensatory penalties. *See Duncan v. Walker*, 533 U.S. 167, 173 (2001) (explaining that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (internal quotation marks and citation omitted)).

Congress's silence is understandable because noncompensatory penalties assessed and collected by the IRS do not fit neatly into the fraudulent transfer context. The purpose of allowing debtors to avoid fraudulent transfers is to discourage creditors from gaining unfair advantages as a result of a debtor's insolvency and potential bankruptcy. The IRS, on the contrary, is "an involuntary creditor." *In re Haas*, 31 F.3d 1081, 1088 (11th Cir. 1994). Tax penalties arise not through contractual bargaining but by operation of statute, and no value is or can be given in exchange. It would defy common sense to find that debtors could avoid such penalties when the IRS was doing only what the tax statutes require.

The impact of a decision to allow avoidance of noncompensatory penalties as fraudulent transfers would be enormous. As noted by both the Bankruptcy Court and the BAP, such a decision could open a Pandora's box of litigation by debtors seeking not only to avoid all sorts of noncompensatory fines and penalties that are commonly encountered in bankruptcy cases but also to recover any prepetition payments made in satisfaction of those fines and penalties. Yet, despite the important ramifications to

debtors, creditors, and the governmental units that have occasion to assess and collect noncompensatory fines and penalties, and despite a bankruptcy landscape that included no cases wherein courts had ever decided that noncompenstory tax penalties should be treated as fraudulent transfers, the legislative history of the Bankruptcy Code provides no evidence that Congress ever conducted hearings or heard debate or otherwise considered whether noncompensatory fines and penalties should be included within the purview of the fraudulent-transfer statute. *See Midatlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) (noting that "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific"). That Congress would be silent about such a matter throughout ten years of careful consideration and investigation is utterly inexplicable *unless* Congress (and the Tennessee Legislature) did *not* intend to change the landscape by making noncompensatory penalties and fines avoidable as fraudulent transfers. Indeed, like the Bankruptcy Court before us, we conclude that the fraudulent-transfer statutes were not meant to provide debtors with either a means to avoid tax penalties legitimately imposed or a means to recover prepetition payments made in satisfaction of those penalties.

We **AFFIRM**.