**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0710n.06

**No. 12-5306**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Aug 02, 2013*
DEBORAH S. HUNT, Clerk

JOHN MCGLONE,

    Plaintiff-Appellant,

v.

JIMMY G. CHEEK, in his official capacity as Chancellor of the University of Tennessee at Knoxville; MAXINE DAVIS, individually and in her official capacity as Dean of Students at the University of Tennessee at Knoxville; and ANGI SMITH, individually and in her official capacity as Associate Dean of Students at the University of Tennessee at Knoxville,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

Before:  MARTIN and ROGERS, Circuit Judges; TARNOW, District Judge.[*]

**BOYCE F. MARTIN, JR., Circuit Judge.**  John McGlone sued several University of Tennessee at Knoxville officials, alleging that the University's policy requiring persons unaffiliated with the University to obtain sponsorship in order to speak on campus violated his First Amendment right to free speech and his Fourteenth Amendment right to due process.  McGlone also moved to enjoin the University from enforcing its sponsorship requirement.  The University moved to dismiss the suit, and the district court granted the University's motion to dismiss and denied McGlone's

---

[*] The Honorable Arthur J. Tarnow, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

No. 12-5306
McGlone v. Cheek, et al.

preliminary-injunction motion. McGlone appeals the district court's judgment. For the following reasons, we REVERSE the district court judgment and REMAND for further proceedings.

I.

McGlone describes himself as a committed Christian. In keeping with his Christian faith, McGlone travels to public universities to share his religious beliefs with college students. He targets outdoor spaces on campuses and shares his beliefs through dialogue, the distribution of literature, and the display of signs. McGlone's message is that "all people need salvation because of their rebellion against God and God provides salvation to those who repent and believe in Jesus Christ." McGlone claims that he "simply wants to expose students to the teaching of Christianity."

In 2008, McGlone began visiting the University of Tennessee at Knoxville to engage in expression of his religious beliefs. The University of Tennessee is a large institution, with approximately 27,000 students and 8,161 faculty members. From 2008 until August 2010, McGlone visited the University's campus five times and successfully expressed his religious beliefs without any interference from the University. He usually used an open-air amphitheater to express his beliefs. On August 25, 2010, McGlone called the University and left a voice message informing University officials of his intention to speak on campus the following day, as had been his practice for all prior visits with the exception of his first visit.

Maxine Davis, the Dean of Student Affairs, and Angi Smith, the Associate Dean of Students, returned McGlone's call and explained that McGlone would not be permitted to use any open area of campus for expressive purposes unless he had a University sponsor. McGlone requested sponsorship from Deans Davis and Smith, both of whom declined, and McGlone then asked Dean

No. 12-5306
McGlone v. Cheek, et al.

Davis for the contact information of the University's legal counsel. Dean Davis gave him the telephone number of Matthew Scoggins, the University Assistant General Counsel. Soon thereafter, McGlone contacted Scoggins, who told McGlone that University policy requires that all speakers who are not affiliated with the University receive sponsorship from "students, faculty, or staff" in order to speak on campus. Scoggins told McGlone that the University had a policy limiting its campus to students, faculty, staff, and invitees and that "this policy was the source of the sponsorship requirement enforced by [the University.]" Dean Smith called McGlone later that day and explained to McGlone that she had talked to Scoggins and confirmed that in order for McGlone to speak on campus, he needed to be "sponsored by a registered student organization, staff, or faculty."

Scoggins emailed McGlone links to two written University policies: (1) the "Access to University Property" policy; and (2) the University student handbook, which is called "Hilltopics." The "Access to University Property" policy, or policy # 1720-1-2, which was promulgated by the University Board of Trustees in 1970 under the provisions of the Tennessee Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-101, *et seq*., reads:

> The University's campuses and facilities shall be restricted to students, faculty, staff, guests, and invitees except on such occasions when all or part of the campuses, buildings, stadia, and other facilities are open to the general public.

A section of the student handbook entitled "Access to Campus" contains nearly identical language. The student handbook defines a guest as "[a] person invited by a university student or employee to visit the campus at a specific time, place, and occasion."

The student handbook specifically addresses the University's sponsorship requirement in a section entitled "Freedom of Expression and Speech," which reads:

> The University of Tennessee considers freedom of inquiry and discussion essential to educational development and recognizes the right of students to engage in discussion, to exchange thoughts and opinions, and speak freely on any subject in accord with the guarantees of our state and national constitutions.

The policy goes on to state:

> To these ends, registered student organizations on campus may freely select, without prior restraints, persons they wish to invite as guest speakers. There are no restrictions to control the point of view expressed by speakers other than those imposed by local, state, and federal laws. Any person sponsored by a registered campus organization is free to speak.

The Freedom-of-Expression policy also says that once a speaker receives sponsorship, no other student or University official has the power to revoke the sponsorship. In an attempt to comply with the sponsorship requirement, as he understood it, McGlone emailed ten Christian-based student organizations on April 13, 2011, requesting sponsorship. None of the organizations responded to McGlone's request. McGlone has not returned to the University campus since failing to obtain sponsorship because, according to him, he was "deterred by the process."

On June 6, 2011, McGlone sent a letter, by way of his attorney, to University officials expressing his belief that the University's sponsorship requirement was unconstitutional. McGlone also asked for assurances that he would be allowed to speak on campus without having to comply with the sponsorship requirement. Scoggins responded with a letter dated June 17, 2011, in which he argued that the University's policy regarding outside speakers is constitutional. The letter said that the University has limited "expressive activity" in the area where McGlone wanted to speak "to a certain class of speakers – students, faculty, staff, and their sponsored guests." The letter also said that the Freedom-of-Expression policy found in the student handbook "explains the process of

speaker sponsorship." Scoggins's letter concluded by informing McGlone that he is welcome to speak on campus once he obtains sponsorship.

McGlone filed suit against Davis, Smith, and University Chancellor Jimmy Cheek. He claimed that the University's sponsorship requirement was unconstitutionally vague, in violation of his First Amendment right to free speech as well as his Fourteenth Amendment right to Due Process. McGlone moved for a preliminary injunction, and the University moved to dismiss the complaint on the grounds that McGlone failed to state a claim upon which relief could be granted. The district court held that the sponsorship requirement was not vague, and it granted the University's motion to dismiss and denied McGlone's motion for a preliminary injunction.

## II.

This Court reviews a district court's grant of a motion to dismiss for failure to state a claim de novo. *McGlone v. Bell*, 681 F.3d 718, 731 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). In order to survive a motion to dismiss for failure to state a claim, the plaintiff's complaint must contain enough facts to state a claim to relief that is plausible on its face. *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We must construe the complaint in the light most favorable to the plaintiff and accept as true all factual allegations therein. *In re Southeast Waffles, LLC*, 702 F.3d 850, 856 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 570).

McGlone argued that the University's sponsorship requirement is unconstitutionally vague because it grants unbridled discretion to University officials and students in granting or denying sponsorship; however, during oral argument, it became clear that alterative grounds for McGlone's

vagueness argument existed. The University contends that its sponsorship requirement clearly establishes that students, faculty, and staff have the authority to grant sponsorship and relies primarily on policy # 1720-1-2 for support. However, the Freedom-of-Expression policy, which, unlike policy # 1720-1-2, explicitly discusses sponsorship, says that student organizations grant sponsorship and makes no mention of individual students, faculty, or staff. This raises the question of whether the inconsistency between the policies makes the University's sponsorship requirement unconstitutionally vague.

Generally, we do not consider sua sponte arguments not presented or urged by the parties; however, "'[e]xceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below.'" *Boals v. Gray*, 775 F.2d 686, 691 (6th Cir. 1985) (quoting *Nuelsen v. Sorensen*, 293 F.3d 454, 462 (9th Cir. 1961)); *see also United States v. Szymanski*, 631 F.3d 794, 797 (6th Cir. 2011). Because the potential injustice at stake is the unconstitutional circumvention of citizens' First Amendment right to free speech, and because McGlone raised a vagueness argument below, sua sponte review is appropriate.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). In *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007), this Court said:

> We have recognized that the vagueness doctrine has two primary goals: (1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement [by officials]. With respect to the first goal, the Supreme Court has stated that "[a] statute which

either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1925). With respect to the second goal, the Supreme Court stated that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [officials] for resolution on an ad hoc and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

Furthermore, the principle of clarity is especially demanding when First Amendment freedoms are at risk. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply."); *Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope . . . is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.").

The University's sponsorship requirement raises both of the concerns highlighted in *Cleveland Firefighters*. First, the policy forbids the doing of an act in terms so vague that people of ordinary intelligence guess at its meaning and differ as to its application. Consistently throughout its representations to McGlone and to this Court, the University has insisted that, together, policy #1720-1-2 and the Freedom-of-Expression policy establish the University's sponsorship requirement. Policy # 1720-1-2 makes no reference to on-campus speakers or sponsorship, but it says that guests are allowed on campus, and the student handbook defines a guest as "[a] person invited by a university student or employee to visit the campus at a specific time, place, and occasion." The

Freedom-of-Expression policy says that "[a]ny person sponsored by a registered campus organization is free to speak" on campus. Inexplicably, the University conflates both policies and concludes that the University's sponsorship requirement clearly provides that students, faculty, and staff have the authority to grant sponsorship.

As a result of the inconsistency between the two policies, it is unclear to the ordinary person who has the authority to grant sponsorship. Furthermore, the record establishes that people of ordinary intelligence—University officials—have applied the policy differently. For example, on August 25, 2010, Scoggins told McGlone that he needed to receive sponsorship from "students, faculty, or staff" in order to speak on campus and, on the very same day, Dean Smith told McGlone that he needed to receive sponsorship from "a registered student organization, staff, or faculty." Presumably, Scoggins's explanation comes from policy # 1720-1-2, and one can only assume that Dean Smith's explanation is the result of an amalgamation of policy # 1720-1-2 and the Freedom-of-Expression policy. Accepting as true the allegations in McGlone's complaint, a plausible vagueness claim exists because the University policy fails to ensure fair notice to the citizenry.

Second, the University's sponsorship requirement opens the door to arbitrary and discriminatory enforcement. Between policy # 1720-1-2 and the Freedom-of-Expression policy, the sponsorship requirement does not clearly specify to whom the decision-making authority has been delegated concerning sponsorships. Consequently, a University official could rely on the Freedom-of-Expression policy and require a person who desired to speak on campus to obtain sponsorship from a student organization and foreclose the option of obtaining sponsorship from an individual student. Such a decision by a University official would severely limit a potential speaker's

sponsorship options considering that in June of 2011 there were 395 registered student organizations and approximately 27,000 students. This appears to be what happened to McGlone. Dean Smith told him that he would have to obtain sponsorship from a student organization, and, given the language of the Freedom-of-Expression policy, McGlone reasonably relied on Dean Smith's representation of the sponsorship requirement. Whether or not the ad-hoc nature of Dean Smith's enforcement of the policy was arbitrary or discriminatory, it was constitutionally problematic. A plausible vagueness claims exists because the University policy fails to provide a clear standard for enforcement.

In addition, vague laws create the danger of having a chilling effect on speech. In *Grayned*, the Supreme Court warned that "[u]ncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964) (citation omitted)); *see also Scull v. Commonwealth of Va. ex. rel. Comm. on Law Reform and Racial Activities*, 359 U.S. 344, 353 (1959) ("Certainty is all the more essential when vagueness might induce individuals to forego their rights of speech, press, and association for fear of violating an unclear law."). The uncertainty regarding who has the authority to grant sponsorships could cause people to refrain from attempting to exercise their First Amendment right to free speech on the University's campus. McGlone, whose past experience included inconsistent enforcement of the sponsorship requirement and who received inconsistent interpretations of and conflicting information about the policy from University officials, has never returned to campus because he was "deterred by the process." In addition to failing to

ensure fair notice to the citizenry and to set out a clear standard for enforcement, the University's vague sponsorship requirement threatens to chill speech.

III.

We review district court decisions regarding preliminary injunctions with First Amendment implications de novo. *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012). In addressing a motion for a preliminary injunction, a court should consider: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

In cases with First Amendment implications, the "likelihood of success on the merits" factor is often determinative because "issues of the public interest and harm to the respective parties largely depend on the constitutionality" of the challenged enactment. *Hamilton's Bogarts, Inc., v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000)). We have already established that McGlone has a plausible vagueness claim. According to the University, its sponsorship requirement consists of two policies that are contradictory on their face. The policy fails to specify clearly to whom the decision-making authority has been delegated concerning sponsorships, and therefore, its prohibitions are not clearly defined. It is likely that McGlone would succeed on the merits of a vagueness challenge, and he is therefore entitled to a preliminary injunction.

No. 12-5306
McGlone v. Cheek, et al.

We REVERSE the judgment of the district court and REMAND with instructions to grant the preliminary injunction.