*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CARY HARDEN-BEY,

　　　　　　*Plaintiff-Appellant,*

　　　*v.*

L. RUTTER, et al.,

　　　　　　*Defendants-Appellees.*

No. 06-1473

>

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 06-00007—R. Allan Edgar, District Judge.

Submitted: March 13, 2008

Decided and Filed: May 12, 2008

Before: MOORE, GILMAN, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Cary Jerome Harden-Bey, Munising, Michigan, pro se.

---

**OPINION**

---

SUTTON, Circuit Judge. Cary Harden-Bey, an incarcerated pro se litigant, challenges the dismissal under § 1997e(c) of the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(c), of his § 1983 claims against several employees of the Michigan Department of Corrections. Because Harden-Bey has stated a cognizable due-process claim, we reverse that part of the district court's order. And because he has failed to state a cognizable cruel-and-unusual-punishment claim under the Eighth (and Fourteenth) Amendment or a cognizable equal-protection claim under the Fourteenth Amendment, we affirm the remaining parts of the district court's order.

I.

Harden-Bey is an inmate at the Alger Maximum Correctional Facility, which is located in Munising, Michigan, and which contains six housing units—three for the general inmate population and three for inmates committed to administrative segregation. On September 18, 2002, prison officials placed Harden-Bey in administrative segregation because "[r]eports have been received from prisoners and staff that . . . Harden-Bey is using his position as a ranking member of the Moori[s]h Science Temple of America to direct and influence his follo[wers] to strong arm other prisoners, col[l]ect debts, approve prisoner assaults and is involved in the approval and planning of a major serious assault on staff and [a] takeover of the housing unit and/or facility here at [Alger].

1

Based upon these reports, prisoner Harden-Bey is considered to be a threat to the safety and security of this facility." (emphasis omitted). Harden-Bey requested a hearing, an investigation and access to all relevant witnesses and documents, claiming that prison officials premised their decision to segregate him on false and religiously biased information.

After conducting a hearing on the matter, a prison official upheld Harden-Bey's placement in administrative segregation. The Hearings Division denied his request for a rehearing, after which he filed an internal grievance challenging his confinement in administrative segregation. In January 2003, prison officials denied the grievance because Harden-Bey had "clearly demonstrated that [he was] a serious threat to the physical safety of prisoners/staff." He filed additional internal grievances in 2004 and 2005 related to his administrative segregation, alleging that several prison officials used their authority and influence to subject him to continued and "indefinite" confinement in administrative segregation and denied him periodic reviews for release from segregation. Prison officials rejected each grievance.

In December 2005, Harden-Bey filed this § 1983 action against several prison officials, challenging his placement and continued confinement in administrative segregation on several federal constitutional grounds. After granting Harden-Bey leave to proceed in forma pauperis, the district court dismissed the complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c).

II.

A.

In challenging the district court's rejection of his due-process claim at the pleading stage, Harden-Bey focuses on the "long term indefinite" nature of his placement in administrative segregation and the absence of hearings during it. In one sense, he faces a steep climb. The Due Process Clause does not protect every administrative slight that occurs behind prison walls. It requires process only when a "life, liberty, or property" interest is at stake. U.S. Const. amend. XIV, § 1. And when it comes to the principal objection to confinement in a prison cell, the deprivation of "liberty," the State already has given Harden-Bey the procedural protections to which he is entitled: a trial in compliance with the due process and other constitutional guarantees applicable to crime and punishment.

But in another sense, Harden-Bey has a point. Even after a proper conviction and sentence, an inmate still retains a "liberty" interest, guarded by due process, with respect to state-imposed prison discipline that rises to the level of an "atypical and significant hardship on the inmate." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But in relation to what? To implicate a cognizable liberty interest in the prison setting, *Sandin* tells us, the discipline must be unusual and substantial "in relation to the ordinary incidents of prison life." *Id.*; *see also Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (discussing "the difficulty of locating the appropriate baseline" from which to measure "what is atypical and significant in any particular prison system").

The question here is whether Harden-Bey's allegedly indefinite confinement in administrative segregation, three years and running as of the time of the complaint, amounts to an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Relying on Sixth Circuit precedent, the district court held that placement in administrative segregation is never "atypical and significant" and that the "length of the placement" does not affect the inquiry. D. Ct. Op. at 4. We disagree.

Two Supreme Court cases cast considerable light on the answer to this question. *Sandin* addressed whether an inmate's placement in disciplinary segregation for 30 days presented the type of atypical, significant deprivation that implicated a protected liberty interest. 515 U.S. at 486. It

did not, the Court held, for three reasons: (1) the inmate's "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody"; (2) the inmate's segregated "confinement did not exceed similar, but totally discretionary, confinement *in either duration or degree of restriction*"; and (3) the inmate's segregation did not "inevitably affect the duration of his sentence." *Id.* at 486–87 (emphasis added).

*Austin* addressed whether inmates' assignment to a maximum-security prison with "highly restrictive conditions" implicates a liberty interest. 545 U.S. at 213. In holding that it did, the Court noted the significant differences between the conditions of confinement at the maximum-security prison and "most solitary confinement facilities," then offered two other explanations for its decision: "First is the duration. Unlike the 30-day placement in *Sandin*, placement at [the maximum-security prison] is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration." *Id.* at 224. "While any of these conditions standing alone might not be sufficient to create a liberty interest," the Court concluded, "taken together they impose an atypical and significant hardship within the correctional context." *Id.*

In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and *Austin* considered the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence. In *Sandin*, a 30-day placement in disciplinary segregation did not suffice to implicate a protected liberty interest; in *Austin*, an "indefinite" placement in a maximum-security prison facility with "highly restrictive conditions" (together with other features of the transfer) sufficed to implicate such an interest, *id.* at 213, 224.

Consistent with these decisions, most (if not all) of our sister circuits have considered the nature of the more-restrictive confinement *and* its duration in determining whether it imposes an "atypical and significant hardship." *See, e.g.*, *Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007) (noting that "[r]elevant factors" in determining whether a liberty interest is implicated "include both the conditions of segregation and its duration" and holding that "[s]egregation of longer than 305 days . . . is sufficiently atypical to require procedural due process protection under *Sandin*"); *Skinner v. Cunningham*, 430 F.3d 483, 487 (1st Cir. 2005) (holding that a liberty interest was not implicated because, among other reasons, the duration of the plaintiff's segregation "was not excessive"); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. Aug. 17, 2005) ("In determining whether prison conditions meet this [*Sandin*] standard, courts place a premium on the duration of the deprivation . . . ."); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (noting that a relevant factor is "the duration of the condition"); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (noting that a relevant factor is "the amount of time the prisoner was placed into disciplinary segregation" and stating that "we have no difficulty concluding that eight years in administrative custody . . . is 'atypical' [and significant] in relation to the ordinary incidents of prison life"); *Hatch v. District of Columbia*, 184 F.3d 846, 858 (D.C. Cir. 1999) (remanding case and noting that, "even if the conditions [the inmate] faced were no more restrictive than ordinary conditions of administrative segregation, the district court should determine whether its duration—twenty-nine weeks . . . —was 'atypical' compared to the length of administrative segregation routinely imposed on similarly situated prisoners"); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (remanding case for district court to consider "both the duration and degree of plaintiff's restrictions as compared with other inmates").

As *Sandin* and *Austin* indicate and as the cases from our sister circuits suggest, the duration of prison discipline bears on whether a cognizable liberty interest exists. Harden-Bey has been in administrative segregation for three years. He alleges, not improbably, that his placement remains "indefinite" and, what is more, that prison officials refuse to give him a hearing to explain his

continued detention. While the prison may have ample reasons for segregating Harden-Bey from the general prison population and may indeed have given him all of the procedural protections to which he is entitled before and after this placement, we have no way of knowing whether that is so based solely on his complaint. On this bare-bones record, we hold only that the district court erred in dismissing the complaint on the ground that the duration of this prison discipline, three years and counting, does not affect whether Harden-Bey has a protected liberty interest. On remand, the court should consider whether the nature of this placement in administrative segregation together with its duration creates a cognizable liberty interest and, if so, whether the State has given Harden-Bey the protection to which he is due.

That would end the matter but for one complication. The district court, it turns out, had a reasonable basis for thinking that the duration of prison discipline has little or no bearing on whether it is "atypical and significant." In one published opinion and in some unpublished opinions and orders, we have said that "administrative segregations [do] not . . . involve an 'atypical and significant' hardship implicating a protected liberty interest *without regard to duration*." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (emphasis added); *see also, e.g.*, *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000).

Yet this language from *Jones* does not deserve the credence that the district court and some of our unpublished decisions have given it. At issue in *Jones* was prison discipline imposed on an inmate who participated in the 1993 prison riots at the Southern Ohio Correctional Facility and who was implicated in the murder of a prison officer. The question at hand was whether the inmate's segregation during the two and one-half years between the riots and an administrative hearing regarding his role in the murder violated due process. 155 F.3d at 812. In holding that it did not, *Jones* indeed observed that administrative segregation does not involve an "atypical and significant" hardship "without regard to duration." *Id.*

But two other features of *Jones* limit its application here. One: *Jones* itself confined the reach of its decision, noting "that our holding here does not mean that every administrative segregation regardless of length or the reason for the segregation will not implicate a liberty interest. The facts of this case and the extraordinarily good reasons for holding plaintiff in segregation form the basis for this decision." *Id.* at 813. Two: *Jones* involved the review of a summary judgment decision, not the review of a pleading-stage dismissal. The panel's holding thus turned not just on whether the placement implicated a protected liberty interest but also on whether the State's explanation—that it needed to segregate an inmate implicated in the murder of a prison guard during the ensuing two-and-a-half-year investigation—sufficed to establish as a matter of law that no due process violation occurred.

*Jones* does not control this case. Harden-Bey has already been in administrative segregation for three years, not two and a half, and his confinement is "indefinite," not limited until a scheduled hearing. And in view of the pleading-stage dismissal of this case, we do not know the particulars of the State's explanation for its confinement of Harden-Bey or the frequency with which hearings are given to determine whether he should remain in administrative segregation. Most fundamentally, however, *Jones* cannot stand for what amount to two irreconcilable propositions: (1) that administrative segregation never implicates a protected liberty interest "without regard to duration," *id.* at 812, and (2) that this does not mean "every administrative segregation regardless of length . . . will not implicate a liberty interest," *id.* at 813. In the end, *Jones*, like all decisions, stands for no more and no less than what was necessary to resolve the case—that the State's explanation for holding the inmate in administrative segregation for two and a half years sufficed as a matter of law to establish that no due process violation occurred.

Our other published decisions in this area do not require a different approach. They deal with the distinct question whether an initial placement in administrative segregation is "atypical and

significant" or whether a placement for a relatively brief period of time is "atypical and significant." *See Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (holding that "an increase in security classification . . . does not constitute an atypical and significant hardship") (internal quotation marks omitted); *Rimmer-Bey v. Brown*, 62 F.3d 789, 789 (6th Cir. 1995) (rejecting a prisoner's allegation that prison officials "violated his procedural due process rights by placing him in administrative segregation without a formal reclassification hearing"); *Mackey v. Dyke*, 111 F.3d 460, 461 (6th Cir. 1997) ("The question in this case is whether Defendants violated [the plaintiff's] due process rights by failing to return him promptly to the general prison population after he was released from administrative segregation."). In holding that an initial placement decision is not "atypical and significant," *Harbin-Bey* and *Rimmer-Bey* do not speak to the question whether the placement may last into perpetuity without becoming "atypical and significant." And in holding that a 117-day delay in returning an inmate to the general population is not "atypical and significant," *Mackey* does not purport to answer whether the duration of administrative segregation is never relevant.

In the final analysis, the nature and duration of an inmate's segregation may affect whether the State has implicated a liberty interest that warrants due-process protection—as do the other *Sandin* factors, such as whether the segregation will affect the overall duration of the inmate's sentence. Because the district court dismissed this case at the pleading stage based in part on the conclusion that the duration of the segregation has little or no bearing on whether that segregation was atypical and significant, we reverse that decision and remand the case so that the district court can assess in the first instance whether the nature and allegedly "indefinite" duration of Harden-Bey's segregation makes these conditions "atypical and significant in relation to the ordinary incidents of prison life."

B.

The district court correctly rejected Harden-Bey's Eighth Amendment claim. To move beyond the pleading stage in this setting, an inmate must allege that he has been deprived "of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Alleging that prison conditions "are restrictive and even harsh" does not suffice because such conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim [under the Eighth Amendment]. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (internal quotation marks and citations omitted).

In his complaint, Harden-Bey makes no allegations that rise to the level of an Eighth Amendment violation. "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. Dec. 8, 2003). Even if we read his complaint to allege emotional or mental injuries, Harden-Bey cannot bring an Eighth Amendment claim for such injuries because he did not allege a physical injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145–46 (6th Cir. May 7, 2002) (per curiam) (denying an inmate's Eighth Amendment claim because the inmate did "not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury") (internal quotation marks omitted).

C.

Harden-Bey's equal-protection claim also fails as a matter of law. As the district court correctly pointed out, this aspect of the complaint says only that his placement in administrative segregation was "created on Religious Bias." "[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also id.* (indicating that "[s]ome factual basis for such claims must be set forth in the pleadings") (internal quotation marks omitted).

Even if Harden-Bey means to rest his claim on the allegation that the prison placed him in administrative segregation because he "is using his position as a ranking member of the Moori[s]h Science Temple of America" to cause disturbances in the prison, that does not help him. His complaint alleges no facts to contradict the disciplinary record, which shows that prison officials placed him in administrative segregation because of past (and impending) efforts to cause disturbances within the prison, not because of his religion. *Cf. Harbin-Bey*, 420 F.3d at 576 ("Although Harbin-Bey claims that his . . . designation [as a security threat] was based on his religious beliefs, the record clearly shows that he was designated as a [threat] because of his gang affiliation, not because of his religion.").

III.

For these reasons, we affirm in part, reverse in part and remand the case to the district court to consider Harden-Bey's due-process claim in the first instance.