NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0482n.06

Nos. 10-5475 / 10-5552

**FILED**

*May 15, 2013*

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EDDIE WILLIAMS, JR.,                                    )
                                                       )
    Plaintiff-Appellant,                               )
                                                       )
                                                       )    ON APPEAL FROM THE
    v.                                                 )    UNITED STATES DISTRICT
                                                       )    COURT FOR THE MIDDLE
CHERRY LINDAMOOD, et al.,                              )    DISTRICT OF TENNESSEE
                                                       )
    Defendants-Appellees.                              )
                                                       )

BEFORE:  SUTTON and GRIFFIN, Circuit Judges; and WELLS, District Judge.[*]

WELLS, District Judge.  While a prisoner at South Central Correctional facility in Clifton, Tennessee, the appellant Eddie Williams attacked a guard. A disciplinary hearing was held, and he was found guilty of assault. His punishment was placement in administrative segregation. The appellant sought injunctive relief in district court, arguing that due process required an additional hearing prior to placement. The district court held a hearing on the motion and concluded that his disciplinary hearing and monthly periodic reviews during segregation provided all the process due to him. The court denied the motion, and this appeal followed. For the reasons that follow, we affirm the district court's decision.

---

[*]The Honorable Lesley Wells, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

**BACKGROUND**

In June 2008, while serving a life sentence at South Central Correctional Facility ("South Central"), the appellant punched a corrections officer in the face. (R.E. 70-1 at 2). On August 25, 2008, a disciplinary hearing was held, evidence was presented, and a staff advisor raised defenses on the appellant's behalf. (Appellant's Appendix at 33; R.E. 155 at 12). The appellant was found guilty of assault. (R.E. 70-1 at 4, 17). The disciplinary board recommended reclassification to administrative segregation, in addition to other penalties. (R.E. 70-1, p. 18). The petitioner was notified of this recommendation at the conclusion of the hearing. (R.E. 70-1 at 18). The warden accepted the board's recommendation, concluding that the appellant was a threat to the safety of staff and other inmates, based on the assault and eighteen write-ups in the previous eight months. (R.E. 70-1 at 46).

Although the recommendation for administrative segregation was adopted at the end of August, the appellant was not placed in segregation until October, soon after his transfer to Riverbend, another prison facility in Tennessee. (R.E. 155 at 13-15). Once placed in segregation, the appellant became subject to certain restrictions: confinement to his cell for 23 hours a day, with one hour of daily exercise outside his cell, weather permitting; non-contact visitation limited to immediate family, lawyers, and ministers; ineligibility for group activities; restraints required outside his cell; limited access to the library and legal materials; limited telephone privileges; and limited employment opportunities. (R.E. 155 at 18-21, 23-24, 45-47).

Beginning in November 2008, the appellant was provided with monthly administrative segregation reviews. (Appellant's Appendix at 40-71). Nineteen reviews are on record, ranging in date from November 3, 2008 to February 11, 2010. *Id.* The reviews summarize the inmate's conduct and attitude regarding return to the general prison population, and they note any information that the inmate might have provided a counselor during his periodic review. *Id.* They further state whether the inmate should remain in segregation or be released. *Id.*

Officials at Riverbend employ a long range phase down process for segregated inmates, in preparation for their eventual release back into the general population. (R.E. 154 at 37). In three steps, restrictions are gradually lifted based on the recommendation of the disciplinary board and approval of the warden. (Appellant's Appendix at 40-71; R.E. 154 at 38). The appellant advanced from level three to level two in November 2009, making him eligible for employment in his unit. (Appellant's Appendix at 49; R.E. 154 at 37). According to testimony taken before the district court, prisoners typically spend nine months at level two and 120 days at level one, with some discretion on the part of the warden, before release into the general population. (R.E. 154 at 38).

**PROCEDURE**

At the time of his placement in administrative segregation, the appellant had a pro se § 1983 suit pending in district court against a number of South Central officials, raising issues not relevant to this appeal. He was proceeding in forma pauperis. (R.E. 5). The district court allowed him to amend his complaint, and the appellant alleged that he was denied due process because he was not afforded a dedicated hearing prior to placement in administrative segregation. (R.E. 70). The

amended complaint added officials at Riverbend as defendants, but they were never served. (R.E. 70). The South Central officials filed a motion to dismiss, and the court entered an order dismissing all claims except the due process claim. (R.E. 112).

The appellant filed for a preliminary injunction on July 23, 2009. (R.E. 100, 101). The court held a hearing on the motion on March 12, 2010. The appellant and Sandra Hall, his Unit Manager at Riverbend, were in attendance, and both testified. (R.E. 122). Counsel for one of the original defendants appeared, but none of the defendants were present. On March 24, 2010, the district court denied the motion for a preliminary injunction, on the ground that due process was satisfied when the appellant received his disciplinary hearing on the assault charge and monthly administrative confinement reviews. (R.E. 126). The court ordered that the appellant show cause as to why the preliminary injunction ruling should not be deemed consolidated with final hearing pursuant to Federal Rule 65(a)(2). (R.E. 126). When he did not, the action was terminated.

**STANDARD OF REVIEW**

When considering a motion for a preliminary injunction, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would otherwise suffer irreparable injury;
> (3) whether issuance of a preliminary injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Id.*

We review a district court's denial of a request for a preliminary injunction for abuse of discretion. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007); *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Legal conclusions are reviewed de novo and factual findings for clear error. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). The determination of whether the movant is likely to succeed on the merits is a question of law and is accordingly reviewed de novo. *Tumblebus*, 399 F.3d at 760. However, "the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief" is reviewed for abuse of discretion. *Id.* The district court's determination will be disturbed only if it relied upon clearly "erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Hamilton's Bogarts*, 501 F.3d at 649.

## DISCUSSION

The appellant recognizes all four preliminary injunction factors, but his argument rests primarily on the ground that he has shown a strong likelihood of success on the merits of his due process claim. The appellant's due process challenge relates exclusively to whether he was entitled to a separate hearing at the time of his placement in administrative segregation. Notably, the appellant acknowledges receiving monthly reviews since placement in administrative segregation, and he does not question their adequacy in relation to any due process right that may have arisen in the course of his continued confinement.

To show a likelihood of success on the merits of his claim, the appellant must demonstrate that his interest in avoiding administrative segregation is a liberty interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). An inmate establishes a liberty interest when a change in conditions of confinement "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine whether changed conditions are "atypical and significant," a reviewing court considers both the duration and the nature of the more restrictive confinement relative to "prison norms and to the terms of the individual's sentence." *Harden-Bey v. Rutter*, 524 F.3d 789, 792-93 (6th Cir. 2008).

In the present case, the appellant has not established that the change in the conditions of his confinement was "atypical and significant." First, as the appellant himself indicates, no facts were produced before the district court establishing the ordinary conditions of his confinement. This prevented a meaningful application of *Sandin*, which essentially requires a comparison between ordinary conditions and the more restrictive conditions. Based on the record, the picture of the appellant's life in administrative segregation is fairly clear, as he is confined to his cell for 23 hours a day and subject to numerous other restrictions described above. But the precise conditions of ordinary prison life prior to placement are not as clear. The appellant describes ordinary conditions

primarily in terms of what they are not, which is to say, ordinarily the appellant was not confined to his cell for 23 hours day or subjected to the various other new restrictions. The lack of factual development in this regard makes analysis under *Sandin* somewhat problematic because it is not entirely clear what is being compared. While the appellant suggests that the district court should have specifically inquired as to baseline prison conditions, it was his burden, not the court's, to make the case that his initial placement gave rise to a protected liberty interest. Therefore, because the appellant failed to produce evidence that would have facilitated a meaningful analysis under *Sandin*, the district court did not err when it denied his motion.

Moreover, to the extent that baseline conditions are consistent with those described in the prevailing case law, the change in conditions of confinement described by the appellant was not "atypical and significant." We have previously held that an "increase in security classification . . . does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). That case rejected an inmate's argument that he was entitled to a hearing prior to reclassification. *Id.* Similarly, in *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995), we concluded that placement in administrative segregation without a hearing did not amount to a due process violation. These cases stand for the proposition that *initial* placement in administrative segregation does not amount to an "atypical and significant" hardship, in which an inmate has a protected interest. *Harden-Bey v. Rutter*, 524 F.3d 789, 794-95 (6th Cir. 2008).

The appellant contends, however, that these cases are inapplicable in this instance because the nature and duration of his confinement more closely resembles that described in *Wilkinson v. Austin*. In that case, the Supreme Court of the United States decided that initial placement in Ohio's Supermax prison implicated a protected interest. *Austin*, 545 U.S. at 224. Assignment to this facility constituted an atypical and significant hardship because (1) the conditions of confinement are "more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units," (2) "placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually," and (3) "placement disqualifies an otherwise eligible inmate for parole consideration." *Id.* at 114, 224.

Although the appellant is disqualified for parole due to placement, the conditions of confinement in the present case do not rise to the level of those described in *Austin*. Unlike the conditions in *Austin*, where "there [was] no indication how long [an inmate] may be incarcerated at [the facility] once assigned there," *id.* at 215, the appellant's confinement is geared toward a return to the general prison population. Riverbend employs a three step, phase down process, by which restrictions are gradually lifted before a prisoner's return to general population, and the record shows that the appellant is at step two, which entitles him to employment in his unit. (R.E. 154 at 37-39, 45-47). Furthermore, the prisoners in *Austin* were reviewed once a year, whereas the appellant receives monthly (sometimes twice a month) reviews, which document whether the appellant is ready for release from segregation or not. (R.E. 154 at 37; Appellant's Appendix at 41-71). These facts place the case outside *Austin's* ambit.

The appellant does not describe conditions amounting to an "atypical and substantial hardship," such that a liberty interest arose prior to his placement in administrative segregation. However, the duration of his confinement, at some point, may have given rise to a protected liberty interest, such that some form of review was constitutionally required. *See Harris v. Caruso*, 465 F.App'x 481, 484 (6th Cir. 2012) ("Prison officials must engage in some sort of periodic review of the confinement of such inmates [in administrative segregation]."). It appears this is what prison officials have done in the present case, as the appellant has received monthly reviews since his placement in segregation. However, as noted above, the appellant does not raise the question whether the monthly reviews adequately protected any due process right that may have arisen since placement.

Finally, the appellant maintains that the district court committed reversible error when it failed to serve the amended complaint on the Riverbend defendants. When a litigant proceeds in forma pauperis, Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915 require the district court to order that service be made on the plaintiff's behalf. In this instance, it appears that service was not made in accordance with the rule. As a consequence, the Riverbend defendants did not appear for the preliminary injunction hearing. The appellant maintains that their absence "contributed to the court's clear error with regard to its factual findings," because the absent defendants possessed evidence concerning the process afforded to the appellant at South Central. We disagree. The pivotal issue in this appeal is whether the appellant possessed a liberty interest in his initial placement in

administrative segregation. Because he did not, any evidence of the process afforded to him at South Central is irrelevant.

The appellant has failed to show a likelihood of success on the merits of his due process claim. His arguments as to the remaining preliminary injunction factors, being dependent on the likelihood of success factor, are accordingly rejected. The factors weigh in favor of denying the motion, and the district court did not abuse its discretion in doing so.

## CONCLUSION

For the reasons stated, we affirm the district court's decision.