NOT DESIGNATED FOR PUBLICATION

No. 124,541

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FREDERICK W. FRITZ IV,
*Appellant*,

v.

SAM CLINE, Warden,
*Appellee*.


MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed January 20, 2023.
Reversed and remanded with directions.

*Kristen B. Patty*, of Wichita, for appellant.

*Jocilyn B. Oyler*, legal counsel, of Kansas Department of Corrections, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.


PER CURIAM: Frederick W. Fritz IV appeals from the district court's denial of his K.S.A. 60-1501 petition challenging his confinement in administrative segregation. The district court held that Fritz failed to properly exhaust his administrative remedies before filing the petition because he did not appeal the administrative segregation classification within 72 hours of the decision per Kansas Department of Corrections (KDOC) rules. Fritz' petition, however, goes beyond challenging the initial decision to place him in administrative segregation. He also challenges the duration of the administrative segregation, which has been ongoing since 2017. The Kansas Supreme Court has held that duration is a factor that courts must consider in determining whether a K.S.A. 60-

1

1501 petition demonstrates a liberty interest infraction. For this reason, we must reverse and remand the case to the district court to consider the duration of Fritz' segregation and whether such a lengthy segregation violates his liberty interest.

FACTUAL AND PROCEDURAL HISTORY

Fritz filed a K.S.A. 60-1501 petition with the Butler County District Court in October 2020. In it he challenged the decision of prison officials at El Dorado Correctional Facility (EDCF) to place him in administrative segregation, asserting that his transfer resulted from a vague other security risk (OSR) report that was essentially unchallengeable because it did not specify the allegations against him. He also challenged the duration of the segregation as excessive.

In July 2017, Fritz was ordered to spend 15 days in disciplinary segregation at EDCF after stabbing another inmate. When he completed disciplinary segregation in August 2017, he was served with an OSR report and placed on long-term administrative segregation. The OSR report, included as an exhibit with Fritz' petition, stated that Fritz was a validated member of a security threat group (STG) called the Country White Boys. It recommended administrative segregation because of the serious nature of the battery Fritz committed against the other inmate, the suspected STG involvement, and Fritz' use of weapons. The report also recommended transferring Fritz to Hutchinson Correctional Facility for long-term restrictive housing placement.

Fritz does not mention in his petition whether he took any action in the following year to challenge the administrative segregation decision. The next exhibit in the record is an administrative segregation review report from June 2018, which reveals that Fritz chose not to attend any reviews between August 2017 and June 2018. Fritz claimed in his petition that at the June 2018 hearing his unit team manager promised that he would be

2

transferred back to general population if he did not incur any disciplinary reports the next month.

Although he did not receive any disciplinary reports the next month, he was not transferred back into the general population. Instead, at the review hearing in July 2018, Randolph told Fritz that he would be placed in holdover and transferred to general population at a different prison. He said Fritz could not enter general population at EDCF because there was "a central monitor between him and an unnamed staff member preventing him from being released at EDCF." The administrative segregation review from July 2018 also states that Fritz needed to be transferred because he had "a staff CM issue at EDCF." Fritz was placed on holdover status in September 2018.

Prison officials served Fritz with a new OSR report in May 2019. Fritz was still on holdover status. Fritz also believed this OSR report was deliberately unspecific. The report, included as an exhibit with Fritz' petition, stated that the prison's investigation division was gathering intelligence which not only confirmed that Fritz was a member of an STG group, but that he was directly involved in the execution and orchestration of several acts of violence on behalf of the group. The most effective strategy for dealing with Fritz' violence and influence, the report said, was to keep him in long-term restrictive housing.

Fritz explained in his petition that he was dissatisfied with the OSR report because he believed he had completed his punishment for the battery he committed. So, he began "to regularly question his placement and the validity of the report." He raised his concerns during segregation reviews, during "rounds," and via request forms. Despite his attempts to get a more definite answer, Fritz remained in holdover.

In June 2020, still confined in holdover, Fritz filed a grievance with the prison asking for clarification on why he was placed in administrative segregation. The

3

grievance was denied because it raised a classification issue. He filed a separate grievance challenging the excessive length of his holdover stay. It was denied on the same grounds.

In his petition, Fritz argued that the vague nature of the OSR reports violated his right to due process because he was not afforded meaningful review of his administrative segregation status. He also argued that the vagueness of the allegations against him violated his due process right to notice and impaired his ability to defend against the allegations. He also asserted that the OSR reports failed to satisfy prison regulations which required prison officials to specifically state the reason an offender is placed in administrative segregation. Finally, Fritz asserted that the time he spent in holdover also violated prison regulations which provided that a prisoner should not be on holdover status for longer than reasonably necessary to accomplish a transfer to another facility.

Fritz claimed that he exhausted his administrative remedies by appealing his grievances and the denial of a transfer request to the Secretary of Corrections. He attached exhibits detailing his attempts to appeal to his petition.

Fritz concluded by accusing prison officials of engaging in "a disturbing level of deliberate conniving and a concerted effort by staff at EDCF to keep [Fritz] in segregation at all costs," even if it meant violating their own policies and Fritz' constitutional rights. At the time he filed his petition, he claimed he had been in administrative segregation for 784 days.

The district court summarily denied Fritz' motion in April 2021. The court held that under KDOC's Internal Management Policy and Procedure (IMPP) 11-106A, inmates must appeal classification decisions to the warden within 72 hours. Rather than utilize this process, Fritz delayed nearly three years before challenging the classification. He also improperly used the grievance procedure to appeal the classification. Under K.A.R.

4

44-15-101a(d)(2), the grievance procedure may not be used to appeal a classification decision. Accordingly, because Fritz failed to properly exhaust his administrative remedies, the district court found it was without jurisdiction to consider Fritz' petition.

Fritz appealed and moved for reconsideration the same day. His appeal was docketed with this court before the district court ruled on the motion for reconsideration, which resulted in this court remanding the case for a decision on the outstanding motion. On remand, the district court denied the motion. Now that the district court has issued a final decision, this court can consider the merits of Fritz' appeal.

Fritz was transferred to Lansing Correctional Facility (LCF) sometime in 2021. In his reply brief, Fritz clarified that he remains in administrative segregation at LCF, so the appeal is not moot. See *Jamerson v. Heimgartner*, 304 Kan. 678, 686, 372 P.3d 1236 (2016) (noting that appeal was moot where inmate challenging confinement in administrative segregation was no longer in administrative segregation). At the time he filed his reply brief, he had been in administrative segregation for 1,858 days.

ANALYSIS

Fritz argues that the district court erred in summarily dismissing his petition. He asserts that the district court construed his claim too narrowly. His appeal goes beyond a challenge to transfer him to administrative segregation—a decision he concedes would have needed to be appealed in 72 hours. Fritz acknowledges that no constitutionally protected liberty interest is implicated when an inmate is transferred to a more adverse condition of confinement. See *Jamerson*, 304 Kan. 678, Syl. ¶ 2 ("A mere change in the level of an inmate's security classification within a prison does not constitute such a deprivation of a liberty interest that it will support a legal challenge by a prisoner."). Rather, Fritz is arguing that the duration of his confinement in administrative segregation has infringed on his due process liberty interests.

5

A prisoner may attack the terms and conditions of his or her confinement as being unconstitutional through a petition filed under K.S.A. 60-1501. To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). The petition must also show that the inmate timely exhausted any available administrative remedies. K.S.A. 75-52,138. This court exercises unlimited review over summary dismissals of K.S.A. 60-1501 petitions. *Johnson*, 289 Kan. at 649.

Before bringing an action against the State, an inmate must exhaust his or her administrative remedies and file proof with the K.S.A. 60-1501 petition that the administrative remedies have been exhausted. K.S.A. 75-52,138. The KDOC regulations set forth a grievance procedure under which inmates first raise a grievance to their unit team, then submit the grievance to the warden, and finally appeal to the Secretary of Corrections. K.A.R. 44-15-102. The grievance procedure cannot be used "as a substitute for . . . the classification decision-making process." K.A.R. 44-15-101a(d)(2). The KDOC's IMPP governs custody classification. IMPP 11-106A provides that appeal from a custody classification can be accomplished by submitting an appeal to the warden through the inmate's team unit counselor within 72 hours of receiving the decision.

The district court held that Fritz should have appealed the classification within 72 hours. This is accurate to the extent that Fritz is challenging the initial classification decision. But Fritz' challenge goes beyond the initial classification decision and includes the conditions caused by his extended confinement in administrative segregation. While an initial classification does not implicate due process concerns, "duration of segregated placement is a factor that courts must consider in determining whether an inmate has . . . demonstrate[ed] a liberty interest infraction." *Jamerson*, 304 Kan. at 685. The Kansas Supreme Court discussed the distinction between an initial classification and the duration of the classification and how it implicates due process in *Jamerson*. Though the relevant

portion of the *Jamerson* opinion is judicial dictum, it provides important guidance on the issue and should be afforded considerable weight. 304 Kan. at 686. So we will compare that case to the one before us.

After more than three years in administrative segregation, James Jamerson filed a K.S.A. 60-1501 petition challenging the basis for his confinement in administrative segregation. The district court summarily denied his petition after finding: (1) Jamerson failed to timely exhaust his administrative remedies, (2) placement in administrative segregation did not implicate constitutionally protected liberty interests, and (3) classification issues were best left to prison authorities.

A panel of this court found that the district court erred in holding that Jamerson failed to timely exhaust his administrative remedies. Jamerson followed the procedure in K.A.R. 44-15-102 for filing inmate grievances. *Jamerson v. Heimgartner*, No. 110,977, 2014 WL 2871439, at *2-3 (Kan. App. 2014) (unpublished opinion), *rev. granted* 301 Kan. 1046 (2015). But this court affirmed the district court on other grounds, agreeing that placement in administrative segregation alone did not implicate due process because it did not "amount to an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" 2014 WL 2871439, at *3 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 [1995]). The court explained that Jamerson had "not outlined in his petition any substantially different restrictions placed on him in segregation, let alone the deprivation of essentials for a civilized existence. Jamerson argues only the duration of his placement—in excess of 1,000 days—as warranting habeas corpus relief." 2014 WL 2871439, at *3. Accordingly, the court found Jamerson failed to establish that a protected liberty interest was at stake and so no due process violation had occurred. 2014 WL 2871439, at *3.

The Kansas Supreme Court granted Jamerson's petition for review on the sole issue "of whether the duration of administrative segregation alone implicates an inmate's

7

due process liberty interest." *Jamerson*, 304 Kan. at 680. The court began by acknowledging that the issue was moot because Jamerson was no longer in administrative segregation. It found that exceptions to the mootness rule applied because the issue was one of statewide interest that was likely to arise again. 304 Kan. at 680. The court then "elect[ed] to set out certain contours for evaluating claims of constitutional liberty interests in the context of extended administrative segregation." 304 Kan. at 680.

The court began by noting that, although inmates are confined to prison, they "retain certain constitutionally protected liberty interests whose deprivation implicates the right to due process." 304 Kan. at 681. Though the range of protected liberty interests is narrow, one may "arise when prison authorities impose a restraint on a prisoner's already quite-limited freedom and the restraint is atypical and a significant hardship on the inmate in relation to the ordinary incidents of prison life." 304 Kan. at 681 (citing *Sandin*, 515 U.S. 472). The court reaffirmed its previous holdings that an initial classification decision alone does not support a claim for relief. *Jamerson*, 304 Kan. at 682-83. The court clarified, however, that an inmate could still challenge the placement in administrative segregation when the placement "encroach[ed] on protected liberty interests." 304 Kan. at 682.

The court cited *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005), for its guidance on the issue of when placement in administrative segregation may implicate a protected liberty interest. 304 Kan. at 683. The *Wilkinson* Court identified three factors to consider in answering the question of "whether an institutional assignment infringes on a protected liberty interest:  the harshness of the conditions, such as deprivation of human contact and environmental and sensory stimuli; the duration of the confinement; and disqualification for parole consideration." 304 Kan. at 683. Based on this case, the *Jamerson* court concluded that "duration is a factor to be considered in assessing the hardship that segregated custody places on an inmate" and "an inmate may proffer a lengthy term of segregation as evidence of hardship." 304 Kan. at 683-84.

8

The court moved on to discussing federal cases that had considered claims that the duration of administrative segregation created an unconstitutional hardship for the inmate. 304 Kan. at 684-85. Some of those cases involved time periods even shorter than the one in this case. In *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006), the court reversed the summary dismissal of a petition alleging that an inmate had been in administrative segregation for 750 days while other inmates were placed in administrative segregation for the most serious offenses for only 180 days. In *Marion v. Columbia Correction Institution*, 559 F.3d 693, 698-99 (7th Cir. 2009), the court held that the mere fact the inmate spent 240 days in disciplinary segregation warranted an evidentiary hearing to determine the actual conditions of segregation and remanded the case to the district court for further fact-finding. In *Harden-Bey v. Rutter*, 524 F.3d 789, 792-93 (6th Cir. 2008), the court found that a prisoner's allegation that he spent more than three years in administrative segregation stated a cognizable due process claim and remanded the case for the district court to assess whether the nature and duration of the prisoner's segregation made the conditions atypical and a significant hardship on the prisoner in relation to the ordinary incidents of prison life. These federal cases contain several citations to other cases in which appellate courts remanded cases to the district court for additional factual development on similar claims.

Following its review of the caselaw, the *Jamerson* court found that courts must consider duration of segregated placement in determining whether an inmate has demonstrated a liberty interest infraction. 304 Kan. at 685. This determination could not be made on the face of Jamerson's petition alone because determining the point at which duration is extreme enough to encroach upon a protected liberty interest "requires specific inquiry and fact-finding by a district court to determine the specific conditions of the administrative segregation." 304 Kan. at 685. The court identified several relevant questions, including "the frequency of visitation, access to exercise or work programs, the degree of supervision, and how those conditions compare with the conditions of inmates in the general prison population." 304 Kan. at 685. When such facts are not developed

9

below, the remedy is "to remand for factual findings and corrected application of the law to those findings." 304 Kan. at 686. Had Jamerson's appeal not been mooted by his release from administrative segregation, the court believed that additional fact-finding "would be particularly important . . . because the record simply does not contain a factual basis for evaluating whether the conditions of Jamerson's placement were 'atypical' and constituted a 'significant hardship in relation to the ordinary incidents of prison life.'" 304 Kan. at 686.

The allegations here are similar to those in *Jamerson*. As in *Jamerson*, the record is scarce and insufficient to determine whether Fritz' confinement has reached the point where it constitutes a significant hardship relative to ordinary prison life. The Kansas Supreme Court has said how it would rule in a case like this—it would find that summary dismissal of the petition was erroneous and remand the case for additional fact-finding. 304 Kan. at 686. This court has followed that guidance in other cases. See *Astorga v. Leavenworth County Sheriff*, No. 122,387, 2020 WL 6533282, at *7 (Kan. App. 2020) (unpublished opinion) ("[W]e will remand to the district court for an evidentiary hearing to develop the facts and apply the *Sandin* and *Jamerson* factors to determine whether Astorga's administrative segregation infringes on a protected liberty interest."); *Bohanon v. Cline*, No. 114,302, 2016 WL 4585091, at *3 (Kan. App. 2016) (unpublished opinion) (same). *Jamerson* also aligns with federal caselaw on the subject. See *Harden-Bey*, 524 F.3d at 793 ("[M]ost (if not all) of our sister circuits have considered the nature of the more-restrictive confinement *and* its duration in determining whether it imposes an 'atypical and significant hardship.'"); *Marion*, 559 F.3d at 698-99 (noting that this proposition was "consistent with the decisions of our sister courts" and "[i]ndeed, other courts of appeals have held that periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions"). This court should also follow *Jamerson*'s guidance.

10

*Jamerson* demonstrates the flaw in the district court's holding here. It distinguishes between an initial administrative segregation classification, which must be appealed within 72 hours and does not implicate a liberty interest, with an administrative segregation so excessive in duration that it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Fritz' challenge falls into the latter category. Requiring such claims to be appealed to prison authorities within 72 hours of the initial classification would be unreasonable because after only 72 hours the infringement on the inmate's liberty rights would not likely be apparent. "Exhaustion of administrative remedies is not required when administrative remedies are inadequate or would serve no purpose." *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, Syl. ¶ 2, 24 P.3d 128 (2001).

Fritz used the administrative remedy available to him—the grievance process. He adhered to the procedures set forth in K.A.R. 44-15-102 by filing a grievance with his unit team, timely appealing that grievance to the warden when he received an unsatisfactory answer, and finally timely appealing to the Secretary of Corrections as a final resort. It was error for the district court to dismiss Fritz' petition because he could only challenge the duration of his administrative segregation if he had appealed the classification within 72 hours of receiving it.

If, after examining the K.S.A. 60-1501 petition, the district court finds that the petitioner "may be entitled to relief," the court must issue a writ of habeas corpus and order the person to whom the writ is directed to file an answer. K.S.A. 2021 Supp. 60-1503(a). Fritz' allegation that he has been in administrative segregation since 2017 may entitle him to relief. Further, his period of segregation appears to be indefinite as nothing in the record suggests when he may be released. Accordingly, the case is reversed and remanded to the district court to issue the writ, consider the *Jamerson* factors, and determine whether Fritz can establish that the State has impaired his liberty interest without affording him due process.

11

Reversed and remanded with directions.