RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0354p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KEITH HARBIN-BEY,

*Plaintiff-Appellant,*

*v.*

No. 04-1458

LYLE RUTTER et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 03-00015—Richard A. Enslen, District Judge.

Submitted: July 22, 2005

Decided and Filed: August 18, 2005

Before: KENNEDY, CLAY, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Keith Harbin-Bey, Munising, Michigan, pro se.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Keith Harbin-Bey, a Michigan prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against several officials employed by the Michigan Department of Corrections (MDOC). Specifically, the defendants are MDOC Inspector and Alger Maximum Correctional Facility Security Threat Group Coodinator Lyle Rutter, MDOC Officer Bill Martin, MDOC Central Office Security Threat Group Coordinator Robert Mulvaney, MDOC Director William Overton, and MDOC Manager of Prison Affairs Michael Powell. Harbin-Bey contended that his designation as a member of a Security Threat Group (STG) without a hearing violated his constitutional rights.

The district court initially dismissed all of Harbin-Bey's claims other than the claim that Rutter had retaliated against him. It subsequently granted summary judgment for Rutter on the retaliation claim as well. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

# I. BACKGROUND

Harbin-Bey, an inmate at the Alger Maximum Correctional Facility in Munising, Michigan, is a Moorish-American Muslim affiliated with a gang known as the Vice Lords. In the fall of 2001, he began writing to family members and to other inmates regarding the prison's STG policy directive. He stated in his letters that the STG policy infringed on prisoners' constitutional rights and on their ability to obtain parole, and he indicated that he was contemplating legal action against Rutter, the prison's STG Coordinator. In addition, the letters allegedly contained veiled references to the Vice Lords. For example, they used the terms "golden sun" and "black moon," which are gang symbols, and the phrase "la via va va," which is Vice Lord code for "all is well."

Rutter intercepted one of Harbin-Bey's letters in November of 2001 and issued a Notice of Intent to Conduct an Administrative Hearing (referred to as an "NOI" in the realm of prison administration). He also ordered Harbin-Bey to refrain from any further correspondence involving STG matters. In numerous letters to Rutter, Harbin-Bey asserted that the allegedly offensive references in his letters were religious and therefore should not be considered violations of STG policy. He did not receive a reply from Rutter.

In March of 2002, Rutter and Mulvaney notified Harbin-Bey that he had been designated an STG leader. Harbin-Bey subsequently wrote to Mulvaney and complained that his designation as an STG leader without a hearing violated his rights to the due process of law.

In May of 2002, Harbin-Bey was notified that an issue of *FHM* (For Him Magazine) had been rejected by the prison because one of the articles in the magazine contained depictions of gang signs. Prison policy prohibits inmates from receiving such information. Harbin-Bey's request that he be given the magazine with the offending article removed was denied. Shortly thereafter, he received a postcard from *FHM* informing him that his subscription could not be continued because the prison had returned the issue in question as "unauthorized."

Harbin-Bey received a second NOI from Rutter in July of 2002. This NOI notified Harbin-Bey that he was being classified as an "STG II" because he had sent his grandfather a photograph of himself in which he displayed an STG tattoo on his arm. Harbin-Bey wrote to Rutter and requested that he not be so labeled without a hearing. He also wrote to Mulvaney, demanding that he receive equal protection under the law. In August of 2002, Harbin-Bey filed three grievances against Rutter, all of which were denied: one for violating his constitutional rights, a second for retaliation, and a third for tampering with his mail. He appealed the denial of the three grievances in accordance with prison procedure.

Harbin-Bey filed the present lawsuit in January of 2003, alleging that the defendants' conduct in applying and enforcing the prison's STG policies against him violated his constitutional rights to (1) equal protection, (2) due process, (3) access to the courts, (4) freedom from censorship of his mail and publications, (5) freedom of religion, and (6) freedom from retaliation. He sought both equitable and monetary relief.

With the exception of Harbin-Bey's retaliation claim against Rutter, the district court dismissed Harbin-Bey's complaint on the basis that it failed to state a claim upon which relief can be granted. The court also denied Harbin-Bey's motion to alter or amend the judgment. Rutter subsequently filed a motion for summary judgment on the retaliation claim, which was granted by the district court on the recommendation of the magistrate judge. This timely appeal followed.

On appeal, Harbin-Bey reasserts all of his original claims other than the one based on freedom of religion. He also argues that the district court abused its discretion when it denied his motion to supplement his complaint as to the retaliation claim. Finally, Harbin-Bey argues that the

district court abused its discretion in ruling that he had failed to exhaust his administrative remedies with respect to defendants Martin and Powell.

## II.  ANALYSIS

### A.      Standard of review

We review de novo the dismissal of a prisoner's complaint on the basis that it failed to state a claim upon which relief can be granted. *McGore v. Wigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).  In determining whether a prisoner has failed to state a claim, we construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that would entitle him to relief. *Turker v. Ohio Dep't of Rehab. & Corrs.*, 157 F.3d 453, 456 (6th Cir. 1998).

We also review de novo a district court's grant of summary judgment. *Minadeo v. ICI Paints,* 398 F.3d 751, 756 (6th Cir. 2005).  Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.      The district court did not err in dismissing Harbin-Bey's equal-protection, access-to-the-courts, and First Amendment claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

#### 1.      *Equal protection and due process*

Harbin-Bey's first claim is that his designation as an STG leader, which caused him "to be permanently excluded from community placement, placed on visitor restrictions, and more," violated the Equal Protection Clause of the Fourteenth Amendment.  He contends that the failure to provide him with a hearing prior to his designation as an STG leader constituted the unequal application of state law, because all other prisoners who are given a special designation, "such as homosexual predator, escape risks, high and very high risk classification," receive a hearing prior to being so designated.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV, § 1.  Legislation is generally presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981).  But when a law adversely affects a "suspect class," such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the law will be sustained only if it is "suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985).

Here, the "rational-basis" test applies.  Inmates are not a suspect class. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  Nor does Harbin-Bey's claim involve the denial of a

fundamental right, because a prisoner does not have a constitutional right to be placed in a specific security classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Although Harbin-Bey claims that his STG designation was based on his religious beliefs, the record clearly shows that he was designated as an STG member because of his gang affiliation, not because of his religion.

The MDOC's policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison. *See Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 136 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence."). Identifying, reclassifying, and separating prisoners who are members of groups that engage in planning or committing unlawful acts or acts of misconduct "targets a core threat to the safety of both prison inmates and officials." *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 469 (4th Cir. 1999).

The MDOC policy directive in question includes the following factors to consider in designating a group as an STG: (1) history and purpose of the group, (2) organizational structure of the group, (3) propensity for violence or specific violent acts or intended acts that can be reasonably attributed to the group, (4) illegal or prohibited acts that can be attributed to the group, (5) demographics of the group, (6) existence of any written materials related to the group, (7) specific illegal acts that can be associated with the group, and (8) any other relevant information. None of these factors are discriminatory.

The so-called "homosexual predators" and "escape risks" may, as Harbin-Bey asserts, receive a hearing before being so designated. But this does not mean that prisoners who are classified as STG members are necessarily entitled to the same procedural protections, because the STG policy directive is not aimed at a suspect class, nor does it invade a fundamental right. *See City of Cleburne*, 473 U.S. at 440. "[W]here individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant . . . to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued." *Id.* at 441-42.

Harbin-Bey has not presented any authority to establish that prisoners are constitutionally entitled to a hearing prior to receiving a special designation. Because the state is not obligated to provide such a hearing, the fact that it offers one for some prison classifications but not for others is of no federal constitutional consequence so long as the choice is not an arbitrary one. *See Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000) ("[R]ational basis review is not a rubber stamp of all legislative action, as discrimination that can *only* be viewed as arbitrary and irrational *will* violate the Equal Protection Clause.") (emphasis in original). Threats to prison security presumably demand more immediate attention than the threats presented by the other categories mentioned by Harbin-Bey. The MDOC's differing treatment for the STG classification is therefore not arbitrary. *See Jones*, 433 U.S. at 136.

Harbin-Bey also cites *Sandin v. Conner*, 515 U.S. 472 (1995), a case involving the procedural due process rights of Hawaii prisoners, for the proposition that "the denial of a hearing, appeal and judicial review . . . as provided to prisoners similarly situated has denied plaintiff the equal application of law." In *Sandin*, the Supreme Court held that, in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. The Court recognized that states may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

But, as the district court below noted, "an increase in security classification, such as being classified as a[n] STG member, does not constitute an "atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *See Moody*, 429 U.S. at 88 n.9 (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"); *but see Wilkinson v. Austin*, 125 S. Ct. 2384, 2389, 2394 (2005) (holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline" because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio").

We conclude that Harbin-Bey's designation as an STG member fits well within the *Jones* and *Sandin* decisions. His Equal Protection Clause and Due Process Clause claims are therefore without merit.

### 2. *Access to the courts*

Harbin-Bey further argues that the district court erred in dismissing his access-to-the-courts claim for failure to state a claim upon which relief can be granted. He contends that his designation as an STG leader without a hearing violates his right to access to the courts because he is unable to seek judicial review of his designation.

Harbin-Bey's contention is incorrect. A prisoner may file a grievance contesting an STG designation pursuant to MDOC Policy Directive 04.04.113, ¶ AA. Once the prisoner has exhausted the internal grievance process, he may present his claim in federal court. *See Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998) ("[T]his court will henceforth require that prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies.").

In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (noting that "the requirement that an inmate show 'actual injury' derives from the constitutional principle of standing"). Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline. *Jackson v. Gill*, No. 03-5045, 2004 WL 232148, at *2 (6th Cir. Feb. 3, 2004) (unpublished). Harbin-Bey has not demonstrated any cognizable injury as a result of his designation as an STG leader. We therefore conclude that the district court properly dismissed his access-to-the-courts claim.

### 3. *First Amendment*

Harbin-Bey next argues that the district court erred in dismissing his First Amendment claim regarding the prison's alleged censorship of his periodicals. He contends that rejecting his *FHM* magazine was not rationally related to the MDOC's proffered goal of maintaining prison security. Specifically, he claims that the policy mandating rejection of the magazine was "an exaggerated response" to the prison's security concerns. He further argues that requiring the prison to allow inmates access to such magazines with any offending articles or pictures removed would not be unduly burdensome.

A prisoner's right to receive mail is subject to prison policies and regulations that are "reasonably related to legitimate penological interests," *Turner v. Safely*, 482 U.S. 78, 89 (1987), such as "security, good order, or discipline of the institution." *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989). Courts generally afford great deference to prison policies, regulations, and practices relating to the preservation of these interests. *Id.* at 407-08. In *Turner*, the Supreme Court set forth the following four factors to determine whether a prison's restriction on incoming publications was reasonably related to legitimate penological interests:

> (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.

*Cornwall v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992) (citing *Turner*, 482 U.S. at 89).

The regulation in question here prohibits prisoners from receiving mail depicting gang symbols or signs. Policy Directive 05.03.118, ¶ HH(21). It requires that the magazine be accepted or rejected as a whole; it does not allow the removal of a prohibited article prior to giving the magazine to an inmate. Harbin-Bey argues that the regulation is an exaggerated response to security concerns in the prison because there are alternatives means of regulating incoming publications short of wholesale rejection; namely, the removal of any offending material from within the publication prior to forwarding it to the inmate.

He does not, however, provide any support for his contention that requiring "prison officials to go through each magazine received by a prisoner and remove all prohibited material so that it may be received by the prisoner" would not, as the district court determined, be unduly burdensome. Moreover, Harbin-Bey's *FHM* subscription was ultimately terminated by the magazine's publisher, not by the prison, the latter rejecting only a single issue. Because the policy directive was reasonably related to the prison's goal of maintaining security and order, the district court properly dismissed Harbin-Bey's claim that rejection of the offending issue violated his First Amendment rights.

**C.     The district court did not err in granting summary judgment for Rutter on Harbin-Bey's retaliation claim, or in refusing to allow Harbin-Bey to supplement his complaint with respect to a new claim of retaliation**

### 1.      *Summary judgment*

Harbin-Bey contends that Rutter retaliated against him when Harbin-Bey threatened to take legal action against Rutter and filed grievances against a number of MDOC officials, including Rutter. He claims that Rutter retaliated by interfering with and confiscating Harbin-Bey's outgoing mail.

Retaliation based on a prisoner's exercise of his First Amendment rights violates the Constitution. *Thaddeus-X,* 175 F.3d at 394. In order to establish a First Amendment retaliation claim, a plaintiff must prove that:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* at 394. The relevant question regarding the second prong of the *Thaddeus-X* test is whether the defendant's adverse conduct was "*capable* of deterring a person of ordinary firmness." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis added) (quotation marks omitted). *Actual* deterrence need not be shown. *Id.*

Harbin-Bey failed to establish that he suffered any adverse action that would satisfy the standard set forth in *Thaddeus-X*. He presented no evidence to establish that Rutter had interfered with his mail, or even that his mail was intercepted at all, after he filed his grievances against Rutter. Moreover, even if Rutter had confiscated Harbin-Bey's mail, Harbin-Bey has not offered any evidence to suggest that Rutter's conduct in issuing the NOIs was motivated by the content of Harbin-Bey's letters or by the fact that he filed the grievances. Finally, Harbin-Bey did not lose any privileges as a result of the NOIs; rather, he was simply not permitted to send mail containing prohibited STG materials. *See Bell*, 308 F.3d at 603 ("Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact [to be determined by the trier of fact]."). As the district court concluded in adopting the Report and Recommendation of the magistrate judge, an inmate of ordinary firmness would not be deterred from filing grievances or writing to family members about the possibility of taking legal action based on the issuance of these NOIs by Rutter.

Harbin-Bey claims that "direct proof or evidence [of retaliation] is impossible to come by in this type of case," but that he has "presented circumstantial evidence, which constitutes more than bare allegations." Admittedly, retaliation "rarely can be supported with direct evidence of intent." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). But conclusory allegations of retaliatory motive "unsupported by material facts will not be sufficient to state . . . a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir.1987); *see also Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994) (unpublished) (holding that the plaintiff's claim of retaliatory transfer was "wholly conclusory and so [was] insufficient to state a cause of action under § 1983"). We therefore conclude that the district court did not err in granting Rutter's motion for summary judgment.

### 2.    *Supplementation of Harbin-Bey's complaint*

Nor did the district court abuse its discretion when it denied Harbin-Bey's motion to supplement his complaint as to his retaliation claim. Harbin-Bey sought to add allegations showing that Rutter had retaliated against him for filing the present action. The district court denied his motion because Harbin-Bey failed to exhaust his administrative remedies through the prison's grievance procedures with regard to Rutter's most recent alleged misconduct.

Although Harbin-Bey filed a new administrative grievance against Rutter, he did so only after commencing this lawsuit. This court has held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (dismissing an Ohio prisoner's suit because he filed his federal complaint before completing the administrative process). We therefore conclude that the district court did not abuse its discretion in refusing to allow Harbin-Bey to supplement his complaint.

### D.    The district court did not err in determining that Harbin-Bey had not exhausted his administrative remedies with regard to Martin and Powell

Finally, Harbin-Bey argues that the district court erred in ruling that he had failed to exhaust his administrative remedies with respect to Martin and Powell. Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies prior to bringing a § 1983 action with respect to prison conditions, even if the state administrative process does not allow the specific type of relief sought by the prisoner. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (holding that the exhaustion requirement of the Prison Litigation Reform Act (PLRA) applied to an inmate's claims

that he was beaten by corrections officers without justification).  This exhaustion requirement is mandatory and must be enforced by the district court sua sponte.  *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998) (enforcing the exhaustion requirement sua sponte and dismissing without prejudice a prisoner's complaint on the basis that he had failed to exhaust his administrative remedies).  The district court does not have the discretion to order a continuance in the absence of exhaustion.  *Wright v. Morris*, 111 F.3d 414, 417 (6th Cir. 1997) (noting that, prior to the enactment of the PLRA, district courts had such discretion).

Prisoners may grieve the application of a policy directive if it affects them personally and involves a concern over which the MDOC has control, but they may not grieve the content of the policy itself.  Policy Directive 03.02.130, ¶ E, F-2.  In a grievance, the prisoner must specifically mention the allegedly offending parties so that the prison has an opportunity to address the claims before they reach federal court.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).  Harbin-Bey has submitted documentation to establish that he has filed several grievances against Rutter.  But he has not demonstrated that he has filed grievances with regard to his claims against Martin and Powell.  As a result, he has not exhausted these claims.

A court, however, need not require exhaustion of available administrative remedies where the claim is subject to dismissal because it is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."  *Brown*, 139 F.3d at 1103.   Here, the district court dismissed Harbin-Bey's claims against Martin and Powell in the absence of exhaustion because it properly determined that Harbin-Bey had failed to state a claim against them upon which relief can be granted.  We therefore conclude that the district court did not err in dismissing Harbin-Bey's claims against Martin and Powell.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.