RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DERRICK MAYE,

*Plaintiff-Appellee*,

*v.*

No. 18-1460

PAUL KLEE, et al.,

*Defendants*,

JOSEPH SERAFIN; WILLIAM TAYLOR,

*Defendants-Appellants*.

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:14-cv-10864—Thomas L. Ludington, District Judge.

Argued:  December 6, 2018

Decided and Filed:  February 14, 2019

Before:  COLE, Chief Judge; GRIFFIN and KETHLEDGE, Circuit Judges.

———————

**COUNSEL**

**ARGUED:**  John L. Thurber, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants.  Sarah S. Firnschild, DICKINSON WRIGHT PLC, Detroit, Michigan, for Appellee.  **ON BRIEF:**  John L. Thurber, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants.  Sarah S. Firnschild, Daniel D. Quick, Zane S. Hatahet, DICKINSON WRIGHT PLC, Detroit, Michigan, for Appellee.

————————————

**OPINION**

————————————

COLE, Chief Judge.   Eid al-Fitr is one of two annual religious feasts central to the Islamic faith.  Michigan Department of Corrections ("MDOC") officials twice prevented Muslim inmate Derrick Maye from participating in Eid.  In 2013, Chaplain Joseph Serafin told Maye he could only attend Eid if he changed his religion from Nation of Islam to Al-Islam.  And according to Maye's deposition testimony, Chaplain William Taylor denied his request to participate in Eid in 2014 without offering any justification for doing so.

Maye brought a cause of action under 42 U.S.C. § 1983, alleging that Serafin and Taylor deprived him of his First and Fourteenth Amendment rights.  The district court denied Serafin and Taylor qualified immunity, which gave rise to this interlocutory appeal.  Because Maye sufficiently alleges the deprivation of his constitutional rights, and a reasonable official would have known that the constitutional rights at issue were clearly established when faced with a court order specifically instructing MDOC officials to allow Muslim inmates to participate in Eid, we affirm.

**I.**

Derrick Maye became a member of the Nation of Islam—one of several sects of Islam—in 1992.  Maye has been a devout, active Muslim for the past two decades, including the years he spent incarcerated in MDOC facilities.  Maye attended religious services twice a week while incarcerated at the Gus Harrison Correctional Facility in 2013, and he only missed two weekly services over the course of his two years at the Cooper Street Correctional Facility from 2013 through 2015.  Maye was considered a leader and spokesperson for the Nation of Islam at the Cooper Street facility.

At both facilities, Maye participated in the observance of the holy month of Ramadan. The end of Ramadan is marked by a religious ceremony called Eid al-Fitr, which Maye describes as follows:

> The Eid is a religious practice that is central to my religious belief. It means breaking the fast. At the end of Ramadan, within 72 hours of the end of Ramadan, the Muslim community or Islamic community comes together and has a feast to break the fast and then afterwards make congregational prayer.

(Maye Dep., R. 117-2, PageID 1582.) But in both 2013 and 2014, MDOC officials denied Maye the opportunity to participate in Eid al-Fitr, which led Maye to bring the cause of action that forms the basis for this appeal.

**A.**

Derrick Maye was not the first inmate to challenge MDOC's policies regarding Eid al-Fitr. Since 2006, MDOC has been embroiled in litigation in the Eastern District of Michigan regarding its policy of refusing to allow Muslim inmates to participate in Eid. *Dowdy-El v. Caruso*, No. 2:06-CV-11765 (E.D. Mich. filed Apr. 12, 2006).

In *Dowdy-El v. Caruso*, multiple Muslim inmates brought a cause of action under 42 U.S.C. § 1983, alleging a deprivation of their First and Fourteenth Amendment rights. Their complaint contained the following allegations regarding MDOC officials' refusal to allow Muslim inmates to attend Eid feasts:

> Muslims observe two annual feasts, Eid ul-Fitr and Eid ul-Adha (the "Eid feasts"). Eid ul-Fitr occurs at the end of Ramadan, a month of fasting. Eid ul-Adha is celebrated approximately 70 days after the end of Ramadan to commemorate God's forgiveness of Abraham for vowing to sacrifice his son. These two feasts are the most holy days in Islam. . . .

> [D]espite the fact that Defendants . . . permit Jews to have a seder at Passover, Defendants have refused to accommodate Representative Muslim Plaintiffs[] and other Muslim inmates[.] Specifically, Defendants have refused to . . . accommodate Muslim inmates desiring to honor the Eid feasts. . . . Defendants' failure to accommodate these core Muslim beliefs and practices imposes a substantial burden for Representative Muslim Plaintiffs, interferes with their ability to practice the basic tenets of their religion, and is in violation of federal law, state and federal constitutional principles and basic human rights law.

(Second Am. Compl., R. 37, PageID 129–30.) The Muslim inmates alleged that MDOC's failure to accommodate their religious requests while accommodating the "needs of similarly situated Jewish inmates" deprived them of their First and Fourteenth Amendment rights. (*Id.* at PageID 133–35.)

On May 24, 2013, the district court ordered that "a judgment shall enter in favor of plaintiffs as to participation in the *Eid* feasts." *Dowdy-El v. Caruso*, No. 2:06-CV-11765, 2013 U.S. Dist. LEXIS 73612, *8–9 (E.D. Mich. May 24, 2013). At the end of its order granting summary judgment, the district court stated: "Plaintiffs are granted judgment regarding the *Eid* fea[s]ts. Plaintiffs shall submit a proposed judgment on or before **Monday, June 3, 2013.** Defendants may file a response to the proposed judgment on or before **Monday, June 10, 2013.**" *Id.* at *10–11 (emphasis in original).

The *Dowdy-El* plaintiffs submitted the proposed judgment on June 3, 2013 as directed. Defendants filed no response. After both parties "attended a hearing on July 31, 2013 and . . . stipulated to the form of [the] Judgment," the judgment was ultimately issued on August 13, 2013. (J., R. 85, PageID 2872.) In the judgment, the district court reiterated that its order on May 24, 2013 "granted Plaintiffs' Motion for Summary Judgment in its entirety as to the issue of the Eid Feasts," and it thereby ordered and adjudged that MDOC officials deprived the inmates of their First and Fourteenth Amendment rights to "attend, congregate for, observe and celebrate . . . the Eid ul-Fitr and Eid ul-Adha feasts." (*Id.* at PageID 2872–73.) The district court also ordered that the judgment "applies to the named Defendants in their official capacity and shall be equally binding upon their successors, agents, officials, employees, representatives and assigns, including Daniel H. Heyns, the Director of the [MDOC]." (*Id.*)

In addition to stipulating to the form of the judgment on July 31, 2013, MDOC also took internal action in response to the *Dowdy-El* litigation before the judgment was formally entered. On July 26, 2013, MDOC amended Policy Directive 05.03.150 to recognize Eid al-Fitr as a protected religious holy day:

> The Special Activities Coordinator shall maintain the Handbook of Religious Groups, which sets forth general information on the beliefs, practices, and customs of each recognized religious group. The Handbook also shall identify religious holy days, including any fasts or feasts that prisoners shall be permitted to observe consistent with Department policy. This includes but is not limited to Ramadan fasts, Seders, and Eid-ul-Fitr and Eid-ul-Adha feasts.

(Am. Policy Directive, R. 112-5, PageID 1280–81.) This amended policy went into effect on July 26, 2013, and was circulated to MDOC employees on July 30, 2013.

**B.**

While MDOC's *Dowdy-El* litigation was ongoing, Derrick Maye was an inmate at the Gus Harrison Correctional Facility. On June 24, 2013, Maye submitted a request to participate in Ramadan to Chaplain Joseph Serafin, the MDOC employee tasked with accommodating religious requests at Gus Harrison. Serafin approved Maye's request to participate in Ramadan.

On July 30, 2013, Maye submitted a second request to Serafin, asking to be called out from work to attend Eid al-Fitr. That same day, Serafin received the revised MDOC policy that included Eid al-Fitr as a protected holy day in line with the *Dowdy-El* judgment. Serafin conceded that he looks at policy amendments when he receives them, and when deposed about his understanding of why MDOC policies change, Serafin stated: "I'm assuming everything is lawsuit driven in the Department of Corrections, so there's a lawsuit, there's a remedy, and then MDOC goes, Okay, we're going to change a policy, and then we, at each facility, get a memo from Lansing. Most of the time we don't hear that there was a lawsuit, we just hear there's been a change." (Serafin Dep., R. 112-7, PageID 1305.)

Even still, on July 31, 2013—the same day MDOC stipulated to the form of the *Dowdy-El* judgment, one day after Serafin received the amended policy, and over two months after the district court granted summary judgment against MDOC for refusing to allow Muslims to participate in Eid—Serafin denied Maye's request to participate in Eid al-Fitr. In his response to Maye's request, Serafin stated that, in order to participate in Eid, Maye "must change [his] religion" from Nation of Islam to Al-Islam, a different sect of Islam. (Serafin Kite Response, R. 112-9, PageID 1320.) Maye did not change his religion, so he was not permitted to participate in Eid al-Fitr in 2013.

In October 2013, Maye was transferred to the Cooper Street Correctional Facility. On July 16, 2014, Maye proposed a request for accommodation for Nation of Islam inmates to observe Eid al-Fitr at the new facility. Maye submitted his proposal to Chaplain William Taylor, the MDOC employee who handled religious programming and scheduling at Cooper Street.

On July 23, 2014, Maye met with Taylor to discuss the proposed accommodation. At the same meeting, Maye contends that he also requested an individual call-out from his work detail

to participate in Eid al-Fitr, and he alleges that Taylor said he would "take care of it." (Maye Dep., R. 117-2, PageID 1604–06.) Taylor, however, denies that Maye ever requested an individual call-out from his work detail. Ultimately, both Taylor and Maye agree that on July 29, 2014, the day of the Eid service, Maye did not receive his call-out from work and was again unable to participate in Eid al-Fitr. This year, other Nation of Islam members were permitted to observe Eid, but Maye did not receive a call-out to participate.

**C.**

After Maye exhausted his claims through the appropriate administrative measures, he filed this action under 42 U.S.C. § 1983, claiming that several MDOC officials, including Serafin and Taylor, violated his rights under the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The magistrate judge recommended that the district court grant Maye's motion for partial summary judgment against Serafin on his equal protection and First Amendment claims, grant Serafin's motion for summary judgment on Maye's substantive due process claim, grant Taylor's motion for summary judgment on all claims except Maye's free exercise claim, and dismiss Maye's claims against all defendants except Serafin and Taylor.

The district court adopted the magistrate judge's recommendations in full, denied qualified immunity to Taylor and Serafin on the remaining claims, and granted partial summary judgment against Serafin on Maye's First Amendment and Fourteenth Amendment equal protection claims. Serafin and Taylor now appeal the district court's denial of their motion for qualified immunity.

**II.**

We review orders denying qualified immunity de novo, *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013), and we accept the "most favorable view of the facts to the plaintiff for purposes of the appeal." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011).

In analyzing whether an official is entitled to qualified immunity, we must make two determinations: first, whether the plaintiff's version of the facts alleges the deprivation of a

constitutional right; and second, whether that right was clearly established such that a reasonable official would have known his actions were unconstitutional.  *Morgan v. Fairfield Cty.*, 903 F.3d 553, 560 (6th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  While courts may take these steps in any order, "we have the ability, if not the responsibility, to clarify the state of the law in this circuit so that government agents can understand the limits of their power and that citizens will be protected when those limits are transgressed."  *Id.*  Accordingly, we address whether Maye sufficiently alleged a deprivation of his constitutional rights before proceeding to whether those rights were clearly established.

**A.**

Maye alleges that he was deprived of his constitutional rights under the Free Exercise and Establishment Clauses of the First Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment.  We analyze each claim in turn.

*1. Free Exercise Clause*

Maye first alleges that Serafin and Taylor deprived him of his rights under the Free Exercise Clause by preventing him from participating in Eid without any valid penological justification.  The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states).

In any free exercise claim, the first question is whether "the belief or practice asserted is religious in the [plaintiff's] own scheme of things" and is "sincerely held."  *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987).  Maye's sincerely-held religious belief is uncontested.

Next, where an inmate challenges prison policies under the Free Exercise Clause, Supreme Court precedent instructs us to follow the standard formulated in *Turner v. Safley*, 482 U.S. 85 (1987):  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner*, 482 U.S. at 89); *see also Ford v.*

*McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) ("We find that prior cases make it sufficiently clear that absent a legitimate penological justification[,] prison officials' conduct in denying Ford [the opportunity to participate in the Eid al-Fitr feast] was unlawful."); *Brown v. Johnson*, 743 F.2d 408, 411–12 (6th Cir. 1984) ("Where an inmate's religious freedom is at stake, correctional officials may only adopt regulations which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline.").

Importantly, we have held that denying inmates the ability to participate in a group Passover Seder—even though the ceremony only lasts "a few hours once a year"—violates their free exercise rights under the First Amendment, given that "Passover is an especially critical and very special time in the Jewish religion." *Whitney v. Brown*, 882 F.2d 1068, 1073 (6th Cir. 1989). The two annual Eid feasts are the functional equivalent for Muslims. As MDOC itself has acknowledged, Muslim prisoners have "TWO religiously required observations – Eid-ul-Fitr and Eid-ul-Adha – for group worship." (Appellee Br. at 24 (citing *Dowdy-El* Order, R. 80, PageID 2863; MDOC Dec. 10, 2010 Memo, R. 55-4, PageID 283).) Thus, Maye's factual allegations, taken as true, would compel the same conclusion here—denying a Muslim inmate the opportunity to partake in Eid would substantially burden his free exercise rights, so Maye has alleged a deprivation of his rights under the Free Exercise Clause.

Serafin and Taylor argue that an isolated incident in which a prisoner is denied the opportunity to attend a religious service does not rise to the level of a First Amendment violation. *See Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010) (finding that inadvertently giving inmate non-kosher meal on isolated occasion was insufficient to demonstrate that official "acted unreasonably"); *Beebe v. Birkett*, 749 F. Supp. 2d 580, 597 (E.D. Mich. 2010) (finding that "accidentally cancel[ing]" one weekly religious service based on prison employees' "confusion and miscommunication" was "insufficient to sustain a constitutional violation"); *Fitch v. City of Leitchfield*, No. 4:08CV-P76-M, 2011 U.S. Dist. LEXIS 118696, at *9 (finding that prison inmate's missing kufi did not place a "substantial burden on his ability to practice his religion") (W.D.K.Y. Oct. 11, 2011); *Gunn v. Ky. Dep't of Corr.*, No. 5:07CV-P103-R, 2010 U.S. Dist. LEXIS 60530, at *12–*13 (W.D.K.Y. June 18, 2010) (finding that preventing inmate from attending chapel service on one occasion was "not sufficient to implicate the Constitution"

where prison policy prevented inmate from reentering the service after security had already escorted him out). But this argument makes the same mistake we highlighted in *Whitney*: it overlooks the significance of a religious event such as Passover or Eid, which is plainly incomparable to the harm of missing one weekly religious service or being denied a kosher meal on an isolated occasion. *Whitney*, 882 F.2d at 1074.

Additionally, the facts taken in the light most favorable to Maye do not reveal any valid penological justification for infringing Maye's First Amendment rights. Serafin's stated reason for rejecting Maye's claim to participate in Eid was that Maye was a member of the Nation of Islam, and he needed to change his religion to participate in Eid. Denying an individual a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts" based on his religion of choice is not a valid penological reason—rather, the Supreme Court has held it is a flagrantly unconstitutional motivation that amounts to "palpable discrimination" in violation of the First Amendment. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

Taylor, on the other hand, has proffered no reason at all for preventing Maye from participating in Eid. His defense to Maye's claims is purely factual—Taylor contends that Maye never requested a call-out, so Taylor never issued one—which is why the district court denied both parties' motions for summary judgment as to this claim. But in this appeal, we are required to accept Maye's version of the facts. Assuming that Taylor prevented Maye from participating in Eid without *any* justification, penological or otherwise, such a decision would be unreasonable under *Turner* and would therefore violate the Free Exercise Clause. 482 U.S. at 89.

### 2. *Establishment Clause*

Maye alleges that Serafin violated his rights under the Establishment Clause by denying him the opportunity to participate in Eid based upon the sect of Islam he followed. The Establishment Clause of the First Amendment prohibits the enactment of any law "respecting an establishment of religion." U.S. Const. amend. I. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v.*

*Valente*, 456 U.S. 228, 244 (1982).  And the same protection extends to different sects within a religion.  *See Zorach v. Clauson*, 343 U.S. 306, 314 (1952).

The Supreme Court has found that an official who "confers [a] privileged status on any particular religious sect" or "singles out [a] bona fide faith for disadvantageous treatment" violates the Establishment Clause.  *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005).  An admission that "a religious service of [one sect] is treated differently than a religious service of other sects" is "fatal" to a defendant's case, because it "amounts to the state preferring some religious groups over" the plaintiff's religion in violation of the First Amendment.  *Fowler v. Rhode Island*, 345 U.S. 67, 69 (1953).

This circuit has not yet resolved the question of whether we look to *Turner* to determine whether prison officials violated the Establishment Clause or simply treat the policy as "suspect" and "apply strict scrutiny in adjudging its constitutionality."  *Larson*, 456 U.S. at 246.  *Compare Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 426 (8th Cir. 2007) (applying strict scrutiny and finding that *Turner* "cannot be used to validate" an Establishment Clause violation, "even when applying [*Turner*] to Free Exercise claims in the same case"), *with Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001) (importing *Turner* standard in analyzing claim that prison official retaliated against inmate for exercising Establishment Clause rights).  But accepting Maye's factual allegations as true, the Establishment Clause violation in this case is clear under either standard.  As the magistrate judge observed:

> [I]t remains undisputed that Serafin expressly denied plaintiff the opportunity to participate in the Eid because of his status as a member of the Nation of Islam, while at the same time permitting members of the majority sect, Al-Islam to participate.  Defendant Serafin's further actions in (1) suggesting that plaintiff change his affiliation to Al-Islam in order to receive permission to participate, and (2) failing to adhere to the prison's own revised policy requiring that Nation of Islam members be permitted to participate in the Eid, underscore the disparity in treatment, amplify the wholesale nature of the deprivation, and readily support a finding of purposeful discrimination.

(R. & R., R. 154, PageID 2379–81.)  Construed in the light most favorable to Maye, the record reveals no justification for treating the Nation of Islam celebration of Eid any differently than the

Al-Islam celebration of Eid. *Turner*, 482 U.S. at 89; *Larson*, 456 U.S. at 247. Thus, Maye's claim that Serafin admitted to affording preferential treatment to those who adhere to Al-Islam is sufficient to allege an Establishment Clause violation.

### 3. Equal Protection Clause

Finally, Maye alleges that Serafin's decision to prevent Maye from participating in Eid while permitting other religious sects to participate in analogous religious events violated Maye's rights under the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "The Clause embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

Of course, to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977). But the Supreme Court has held that because the "Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental constitutional premises," we treat "as presumptively invidious those classifications that disadvantage a 'suspect class,' or that impinge upon the exercise of a 'fundamental right.'" *Plyler v. Doe*, 457 U.S. 202, 216–17 (1982) (footnotes omitted). As a result, when the distinction "adversely affects a 'suspect class,' such as one defined by race, alienage, or national origin, or invades a 'fundamental right,' such as speech or religious freedom, the law will be sustained only if it is 'suitably tailored to serve a compelling state interest.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)).

Accepting Maye's allegations as true, Serafin's actions violate the Equal Protection Clause. As the magistrate judge noted, Maye alleged that he was "similarly situated in all material respects to members of Al-Islam who were permitted to participate in the Eid feast, noting their mutual observance of the central tenets of Islam as well as his Level I inmate status." (R. & R., R. 154, PageID 2374–75.) Yet the undisputed facts show that Serafin still "made a

conscious decision to treat religious adherents of Al-Islam differently from plaintiff and other adherents of the Nation of Islam" and "suggested to [Maye] that if he wanted to receive the same treatment that Al-Islam members received, he should change his religious sect to Al-Islam." (*Id.* at PageID 2368–69.)   As established above, a facially discriminatory distinction between the Nation of Islam and Al-Islam sects would burden Maye's fundamental rights to religious freedom under the First Amendment, which means an invidious purpose may be inferred. Therefore, Maye has sufficiently alleged that Serafin deprived him of his right to equal protection under the law.

**B.**

The second step of the qualified immunity analysis requires us to look to whether the officials' acts violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.  To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted); *Williams v. Com. of Ky.*, 24 F.3d 1526, 1541 (6th Cir. 1994) (framing the issue as whether officials "reasonably can anticipate when their conduct may give rise to liability for damages").  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Anderson*, 483 U.S. at 640 (internal citations omitted).  To aid in our analysis, we have understood this second step to entail two basic questions:  whether "the right is clearly established," and "whether a reasonable person in the defendant's position would have known that his or her actions violated clearly established rights." *Blake v. Wright*, 179 F.3d 1003, 1007–08 (6th Cir. 1999).

"In order for the law to be clearly established as of the date of the incident, the law must 'truly compel (not just suggest or allow or raise a question about), the conclusion . . . that what defendant is doing violates federal law *in the circumstances.*'"  *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 607 (6th Cir. 2005) (quoting *Saylor v. Bd. of Educ.*, 118 F.3d 507, 515–16 (6th Cir. 1997) (emphasis in original).  Here, by virtue of the district court's order in *Dowdy-El*, the law explicitly compelled that the defendants' actions violated the First and Fourteenth

Amendments. As counsel for Serafin and Taylor conceded at oral argument, the district court's injunctive order in *Dowdy-El* required MDOC officials to allow Muslim inmates to celebrate Eid, and Serafin and Taylor violated the district court's order by preventing Maye from participating in Eid. The binding order staring the defendants in the face was sufficient to clearly establish the law.

Serafin and Taylor argue that, because the *judgment* memorializing the *Dowdy-El* order was not issued until after Eid al-Fitr took place in 2013, the *Dowdy-El* precedent was not yet clearly established at the time of their actions. But this defense is unpersuasive. First, this argument plainly cannot help Taylor, as Maye's allegations against Taylor involve actions taken in 2014, a year after the district court issued the judgment in *Dowdy-El*. Second, even before Eid took place in 2013, the rights in question were already clearly established in every meaningful sense. Before Maye was prohibited from attending either Eid service, the district court had already issued a binding order enjoining these defendants from preventing Muslim inmates to participate in Eid, MDOC had already stipulated to the ultimate form of the judgment in *Dowdy-El* (including the provision that the judgment would apply "to the named Defendants in their official capacity and shall be equally binding upon their successors, agents, officials, employees, representatives and assigns"), and MDOC had amended and disseminated a new policy regarding Eid that was revised in accordance with the district court's findings, which served to place its officials on notice of this change. And third, the *Dowdy-El* order is only the most obvious precedent that clearly establishes these rights: the same cases that demonstrate that Maye alleged constitutional violations would also suffice to show the rights were clearly established in 2013 and 2014. *See supra* at 8–13 (citing *Whitney*, 882 F.2d at 1073–74; *Turner*, 482 U.S. at 89; *Fowler*, 345 U.S. at 69–70; *Harbin-Bey*, 420 F.3d at 575–76).

So only one question remains: in light of the precedent in *Dowdy-El*, would a reasonable official have known his actions violated clearly established constitutional rights? The answer must be yes, especially when considered through the lens of either "defendant's position" in this case. *Blake*, 179 F.3d at 1007–08. The district court's injunctive order in *Dowdy-El* applied to *these defendants* and concerned *virtually identical facts* to the scenario that Serafin and Taylor were facing. Put succinctly, reasonable officials follow court orders. Additionally, in response

to the *Dowdy-El* litigation, MDOC disseminated an amended policy specifically placing its employees on notice that Eid al-Fitr was a protected holy day for Muslim inmates.  (MDOC Email, R. 112-6, PageID 1295.)  Any reasonable MDOC employee would have known that preventing a Muslim inmate from attending Eid violated the First and Fourteenth Amendments.

## III.

We affirm the judgment of the district court.